FILED

DEC 1 0 2020

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

**EEOC Complaint Form**

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

_____

Sandra L. Harrington

_____

_____

(Name of plaintiff or plaintiffs)

v.

_____

Ryan D. McCarthy, Secretary

_____

Department of the Army, Agency

_____

(Name of defendant or defendants)

Civil Action Number SA20CA1410OG

(Supplied
by Clerk's Office)

**COMPLAINT**

1.   This action is brought by Sandra L. Harrington_____, Plaintiff,
pursuant to the following selected jurisdiction:

**(Please select the applicable jurisdiction)**

[   ]  Title VII of the Civil Rights Act of 1964 (42 USC §§ 2000e et seq.)   Employment
Discrimination on the basis of race, color, sex (gender, pregnancy and sexual harassment),
religion or national origin.

[   ]  The Age Discrimination in Employment Act (29 USC §§ 621 et seq.) (**ADEA**).

[   ]  The Americans With Disabilities Act (42 USC §§ 12102 et seq.) (**ADA**).

[   ]  The Equal Pay Act (29 USC § 206(d)) (**EPA**).

[ **x** ]  The Rehabilitation Act of 1973 (29 USC §791 et seq.) (Applicable to federal employees
only).

2.   Defendant  Ryan D. McCarthy, Secretary of the Army___(Defendant's name) lives
at, or its business is located at  101 Army Pentagon_____
(street address),  Washington,_____ (city),  D.C._____
(state),  20310-0101_____ (zip).

3a.　　Plaintiff sought employment from the defendant or was employed by the defendant at _____ Joint Base San Antonio, Fort Sam Houston _____(street address), (city), __TX_____(state), __78232_____(zip).

3b.　　At all relevant times of claim of discrimination, Defendant employed ___ ~ 330,000 (#) employees.   If defendant is a union, at all relevant times of claim of discrimination, Defendant had __n/a___ (#) members.

4.　　Defendant discriminated against plaintiff in the manner indicated in paragraph 8 of this complaint on or about _____(month) _____(day) ___ (year).   If incidents of discrimination occurred more than one day, please indicate the beginning and ending dates of such acts: __Apr 2013 through Present Dec 2020__

5.　　Plaintiff filed charges against the defendant with the Equal Employment Opportunity Commission (E.E.O.C.) charging defendant with the acts of discrimination indicated in paragraph 7 of this complaint on or about _____ (month) _____(day) _____(year).   (Not applicable to federal civil service employees).

6a.　　The E.E.O.C. issued a **Notice of Right to Sue** which was received by plaintiff on ⸍ (month) _____(day) _____(year).   (Not applicable to ADEA and EPA claims or federal civil service employees).

**VERY IMPORTANT NOTE:**　　**PLEASE ATTACH A COPY OF YOUR NOTICE OF RIGHT TO SUE AND THE ENVELOPE IN WHICH IT WAS RECEIVED TO THIS COMPLAINT.**

6b.　　Please indicate below if the E.E.O.C issued a **Determination** in your case:

[ X ] Yes
[　　] No

**VERY IMPORTANT NOTE:**　　**IF YOU CHECKED "YES", PLEASE ATTACH A COPY OF THE E.E.O.C.'S DETERMINATION TO THIS COMPLAINT**

7.　　Because of plaintiff's:

**(Please select the applicable allegation(s))**

[　　] Race (If applicable, state race) _____

[　　] Color (If applicable, state color) _____

[  ]   Sex (gender, pregnancy or sexual harassment) (If applicable, state sex and claim)

[  ]   Religion (If applicable, state religion) _____

[  ]   National Origin (If applicable, state national origin) _____

[  ]   Age (If applicable, state date of birth) _____

[ X ]   Disability (If applicable, state disability) <u>arthritis, life-threatening sleep apnea, and</u> strokes

[ X ]   Prior complaint of discrimination or opposition to acts of discrimination.
(Retaliation) (If applicable, explain events of retaliation) <u>Terminated rather than</u>
<u>Separated for Retirement</u>

The defendant:   **(please select all that apply)**

[  ]   failed to employ plaintiff.

[X]   terminated plaintiff's employment.

[X]   failed to promote plaintiff.

[X]   harassed plaintiff.          (allowed hostile work environment)

[X]   other (specify) <u>failed to accommodate & wrongfully denied Discontinued Service</u> &
.           Disability Retirements (NOTE:  These are not civil service & are not
controlled by OPM; they are under the sole control & authority of the Army)

8a.   State **specifically** the circumstances under which defendant, its agent, or employees
discriminated against plaintiff **PERSONALLY**:

<u>**VERY IMPORTANT NOTE:**</u>    **INCLUDE <u>SPECIFIC DATES</u>, <u>SPECIFIC EVENTS</u>,
AND ANY <u>SPECIFIC COMMENTS</u> MADE BY
DEFENDANT PERTAINING TO THE
DISCRIMINATION CLAIM ALLEGED ABOVE.**

Please See Attached
_____

.

8b.   List any **witnesses** who would testify for plaintiff to support plaintiff's allegations
and the substance of their testimony:
BG Erik H. Torring III (ret.) & LTC Robert A. Goodman (ret.) could both verify:  hostile work
<u>environment & complaint of same via IG response, that plaintiff was told at announcement of</u>
transfer she would not/could not be accommodated upon transfer but that she would receive
Discontinued Service Retirement, that she had been working WITH accommodations since Oct 2010

8c.   List any **documentation** that would support plaintiff's allegations and explain what
the documents will prove: EEO case files contain documents to support all allegations in #7.

9.    The above acts or omissions set forth in paragraphs 7 and 8 are:

[X]   still being committed by defendant. (Appropriate retirement is still denied)

[  ]   no longer being committed by defendant.

10.   Plaintiff should attach to this complaint a copy of the charge filed with the Equal Employment Opportunity Commission.   This charge is submitted as a brief statement of the facts supporting this complaint.

WHEREFORE, plaintiff prays that the Court grant the following relief to the plaintiff:

[   ] Defendant be directed to employ plaintiff.

[   ] Defendant be directed to re-employ plaintiff.

[   ] Defendant be directed to promote plaintiff.

[X ]Defendant be directed to <u>retroactively grant all legally available remedies for improper acts</u> & ommision

and that the Court grant such other relief as may be appropriate, including injunctive orders, damages, costs and attorney's fees.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

10 December 2020
Date

*Sandra Harrington*
Signature of Plaintiff

219 Broken Arrow
Address of Plaintiff

Floresville,          TX                          78114
City                   State                       Zip Code

(210) 663-6278

Telephone Number(s)

Reference #: 2020002473
Sandra L. Harrington
219 Broken Arrow
Floresville, TX 78114

Item 6b.
page 1 of 7



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Sandra L. Harrington, a/k/a
Callie B.,[1]
Complainant,

v.

Ryan D. McCarthy,
, Secretary,
Department of the Army,
Agency.

Request No. 2020002473

Appeal No. 2019000224

Hearing No. 451-2016-00083X

Agency No. ARFTSAM15JAN00205

<u>DECISION ON REQUEST FOR RECONSIDERATION</u>

Complainant timely requested that the Equal Employment Opportunity Commission (EEOC or Commission) reconsider its decision in EEOC Appeal No. 2019000224 (December 19, 2019). EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision issued pursuant to 29 C.F.R. § 1614.405(a), where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. See 29 C.F.R. § 1614.405(c).

During the relevant period, Complainant worked as a Financial Manager at the Agency's Veterinary Command of Animal Medicine at Fort Sam Houston, in Texas.

On March 11, 2015, Complainant filed a formal EEO complaint. Complainant claimed that the Agency discriminated against her based on disability and in reprisal for prior EEO activity (instant complaint) when:

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.



Item 6b.
page 2 of 7

2                                   2020002473

1. on or about June 1, 2014, Complainant was tasked to provide additional medical documentation;

2. from June 1, 2014 to December 2014, the Director of Veterinary Services, Complainant's second line supervisor (S2) delayed his decision on her reasonable accommodation request;

3. on or about December 12, 2014, Complainant's request to remain in her position until the end of the fiscal year to complete high-priority audits was denied;

4. from April 2014 to January 23, 2015, Complainant was repeatedly denied her request for reasonable accommodation to remain at the Agency and telework;

5. on or about January 23, 2015, Complainant was told her position at the Agency would not be abolished because they wanted to keep another employee; and

6. on April 28, 2015, Complainant received a Notice of Removal from S2.

The investigation into the complaint record reflects that following pertinent facts relating to the subject claims.

By letter dated June 16, 2014, Complainant was provided a Notice of Transfer of Function (the Notice). The Notice stated that due to the Public Health Command transition, Complainant's position as a Financial Manager was being moved from its current location at Fort Sam Houston, Texas, to Aberdeen Proving Grounds in Maryland. The Notice stated that the transition would occur no later than March 31, 2015. The Notice provided that Complainant had the right to transfer with the same pay plan, grade, and base salary. However, should Complainant decline to transfer, she would be separated from employment.

On or about June 23, 2014, Complainant submitted a reasonable accommodation request to maintain her Texas residence while performing her duties either at a remote work site, and/or permanent telework in lieu of relocating to Maryland.

On July 16, 2014, Complainant's first line supervisor, the Animal Medicine Program Manager (S1), requested Complainant provide "specific medical information as to why she cannot relocate." By letter dated September 9, 2014, S1 informed Complainant that her request was denied because there was no medical reason that would have prevented her from physically relocating to Maryland. S1 stated that if Complainant relocated, telework requests could be considered, but not full time telework from Texas.

By letter dated December 19, 2014, S2 denied Complainant's request for reconsideration of S1's denial. S2 stated that the duties of her position and her role with the command made it necessary for her to physically report for duty. On December 19, 2014, Complainant declined to transfer to the Maryland facility. Complainant requested to stay in her position through the end of the fiscal year.



3                                                2020002473

Complainant was told this request would not be possible, and that it was not feasible for a fund manager to perform the essential functions of the position while permanently teleworking. Management stated that the Maryland location would have assisted with any telework requests, if Complainant had accepted the transfer, but that management could not offer her permanent telework status from Texas. In a discussion regarding her position, management stated that Complainant's position was not abolished, and she was only terminated because she declined the transfer.

On March 23, 2015, Complainant received a Notice of Proposed Removal as she had declined the transfer. On April 28, 2015, Complainant received a Notice of Removal from S2, effective April 30, 2015. The Notice further stated that Complainant would remain in the Priority Placement Program for the local commuting area for one year from the date of her removal.

After its investigation, the Agency provided Complainant with a copy of the report of investigation and notice of right to request a hearing before an Equal Employment Opportunity Commission Administrative Judge (AJ). Complainant timely requested a hearing. The assigned AJ granted the Agency's July 6, 2016 motion for a decision without a hearing and issued a decision without a hearing on June 28, 2018. The Agency subsequently issued a final order adopting the AJ's finding that Complainant failed to provide that the Agency subjected him to discrimination as alleged. An appeal followed.

In the prior decision, the Commission affirmed the Agency's final decision adopting the AJ's decision finding no discrimination.

In her June 28, 2018 decision, the AJ determined that the Agency articulated legitimate, non-discriminatory reasons for its actions. The AJ noted that Complainant refused to accept the transfer to Maryland and requested that she remain in her position with the accommodation of permanently teleworking from Texas. The AJ found that the Agency established that the position in question was not suited for full-time telework, and because the entire operation was being moved to Maryland, there was no longer a position available for Complainant in Texas. The AJ further determined that Complainant was not subjected to a discriminatory hostile work environment.

After reviewing the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(c), and it is the decision of the Commission to deny the request. On reconsideration, Complainant essentially raises the same arguments previously considered during the original appeal. We emphasize that a request for reconsideration is not a second appeal to the Commission. *See* EEO MD-110, Ch. 9, § VII.A. Rather, a reconsideration request is an opportunity to demonstrate that the appellate decision involved a clearly erroneous interpretation of material fact or law, or will have a substantial impact on the policies, practices, or operations of the Agency. Complainant has not done so here. The decision in EEOC Appeal No. 2019000224 remains the Commission's decision. There is no further right of administrative appeal on the decision of the Commission on this request.



Item bb.
page 4 of 7

4                                          2020002473

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0610)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

## RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations

September 10, 2020
Date

Item 6b.
page 5 of 7

5                                    2020002473

## <u>CERTIFICATE OF MAILING</u>

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.** I certify that this decision was mailed to the following recipients on the date below:

Sandra L. Harrington
219 Broken Arrow
Floresville, TX 78114

Department of the Army
Director, EEO Compliance and Complaints Review, (EEOCCR)
ATTN: SAMR-EO-CCR (Spurgeon A. Moore)
Via FedSEP

<u>September 10, 2020</u>
Date

Compliance and Control Division

Item 6b.
page 6 of 7

U.S.POSTAGE >> PITNEY BOWES

$ 000.65⁰

ZIP 20507
02 4W
0000361777 SEP 10 2020

CAPITAL DISTRICT

11 SEP 2020 PM 4

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS
P.O. BOX 77960
WASHINGTON, DC 20013

OFFICIAL BUSINESS

78114-601319

Item 6b.
page 7 of 7

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8c. RELEVANT
DOCUMENTATION

## ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM #8c.

## RELEVANT DOCUMENTATION (all available in EEOC case files & last two are

## included in this complaint; list is not intended to be exhaustive)

1. **Plaintiff's Position Description**

   Will detail job duties and qualifications to show whether or not position

   transferred to APG as is or, compared to yet to be received Agency paperwork

   on disposition of same position upon transfer for APG, job position of plaintiff was

   effectively abolished and plaintiff is entitled to Discontinued Service Retirement

2. **Plaintiff's signed telework agreement**

   Will show basics of plaintiff's telework agreement that expired in 2014 and was

   not offered to be continued upon transfer of function although plaintiff had been

   successfully performing position requirements under that agreement and position

   was purportedly transferring 'as is' to APG

3. **Plaintiff's Requests for Reasonable Accommodation & Defendant's**
   **Responses**

   Will show plaintiff requested reasonable accommodations in good faith but

   defendant failed either to accommodate or to definitively refuse accommodations

   in support of plaintiff's request for Disability Retirement

4. **PHC Telework Policy**

   Will show telework for supervisors was limited to 1 day per week plus ad hoc and

   would not allow continuation of plaintiff's then current reasonable

   accommodations allowing a minimum of 2 telework days per week plus a very

   flexible schedule of when hours were actually worked during days worked

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8c. RELEVANT DOCUMENTATION

5. **Plaintiff's applications (original & appeal) for Disability Retirement**

    Will show plaintiff's physician & Agency's occupational health physician both indicated plaintiff could NOT work without current & increasing accommodations and that plaintiff met requirements for Disability Retirement according to regulations in effect at time of applications; will show no legitimate, non-discriminatory reasons for denial

6. **E-mail correspondence between plaintiff & Agency ref Disability Retirement denial**

    Will show Agency continued to maintain plaintiff must either be unqualified and totally and permanently unable to work or was able to work and therefore ineligible for disability retirement without taking reasonable accommodations into account in direct contradiction to Cleveland v. Policy Management Systems Corporation et al., U.S., 119 United states Supreme Court 1597 (1999), in which Supreme Court Justice Breyer, delivering the opinion for a unanimous Court, said:  "In our view, however, despite the appearance of conflict that arises from the language of the two statues (the ADA & SSA), the two claims do not inherently conflict to the point where courts should apply a special negative presumption like the one applied by the Court of Appeals here.  That is because there are too many situations in which an SSDI claim and an ADA claim can comfortably exist side by side.  For one thing, as we have noted, the ADA defines a "qualified individual" to include a disabled person "who … can perform the essential functions" of her job "*with reasonable accommodation*".  Reasonable accommodation may include: "job restructuring, part-time or modified work

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8c. RELEVANT DOCUMENTATION

schedules, reassignment to a vacant position …" 42 U.S.C.12111(9)(B).  By way of contrast, when the SSA determines whether an individual is disabled for SSDI purposes, it does not take the possibility of "reasonable accommodation" into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI. … the matter of "reasonable accommodation" may turn on highly disputed workplace-specific matters; and an SSA misjudgment about that detailed, and often fact-specific matter would deprive a seriously disabled person of the critical financial support the statute seeks to provide. … The result is that an ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it. … Our ordinary rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to "set forth two or more statements of a claim or defense alternative or hypothetically," and to "state as many separate claims or defenses as the party has regardless of consistency."  Fed. Rule Civ. Proc. 8(e)(2).  We do not see why the law in respect to the assertion of SSDI and ADA claims should differ. … To defeat summary judgment, that explanation (of any apparent inconsistency) must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation". … The parties should have the opportunity in the trial court to present, or to contest, these explanations, in sworn form where

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8c. RELEVANT
DOCUMENTATION

appropriate. [The court then vacated the judgment of the Court of Appeals

upholding the District Court's summary judgement and remanded the case for

further proceedings.] The case is relevant because SSA disability requirements

are specifically referenced in the NAF Disability Retirement application and the

SSA disability requirements are actually more restrictive than the NAF Disability

Retirement requirements; i.e., since plaintiff met the more restrictive SSA

disability requirements, NAF Disability Retirement should be granted but, if not,

the principles of this case should allow plaintiff's complaint to proceed to trial.

7. **Transfer of Function Documentation**

Will show Termination as an Adverse Action was improper since Agency was

aware plaintiff was eligible for Early Retirement at a minimum; will show no

legitimate, non-discriminatory or non-retaliatory reason for processing plaintiff's

removal as an Adverse Action Termination rather than Separation for Retirement

8. **Jessica Shiepko full testimony to EEO Investigator**

Will show hostile work environment

9. **Plaintiff's sworn statement for AR 15-6 IG complaint (included)**

Will show PHC was aware plaintiff was subjected to hostile work environment

10. **Request to Amend Discrimination Complaint (included)**

Will show plaintiff's request to amend complaint for clarity to specifically include

denial of Discontinued and Disability Retirements was improperly denied due to

the conflict of interest of Ms. Masten being both the local EEO legal counsel and

the Agency Representative; will show amended remedies requested

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8a. SPECIFICS OF CLAIM

## ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM #8a. SPECIFICS OF CLAIM

### Dates of Discrimination:

**Apr thru Aug 2013**

Co-workers repeatedly humiliated & embarrassed me ref my disabilities by openly commenting on them, walking out of meetings holding their noses, covering their noses, directing fans and various air fresheners & disinfectants toward my desk; on some occasions COL Torring sent me home early due to their complaints.  I discussed the situation with LTC Goodman and COL Torring numerous times.  LTC Goodman eventually showed me the same co-workers had officially complained to COL Torring about my disabilities and reasonable accommodations.

**26 Apr 2013**

I contacted Toni Case, Chief, Fort Sam Houston (FSH) Civilian Personnel Office (CPO), regarding hostile work environment & increasing harassment and she referred me to Lou Ann Reiser, Chief, Labor / Management Relations, who referred me to the FSH EEO office after telling me my doctor needed to change my medications to ensure there were no objectionable side effects.

**12 Jun 2013**

MAJ Kelly Evans, who sat in front of me wearing a face mask in my presence only, sprayed a Lysol like substance directly into my face over the cubicle wall separating us. I immediately reported this to LTC Goodman and COL Torring.

**26 Sep 2013**

Public Health Command (PHC)'s Inspector General (IG) notified me I was under an AR15-6 investigation for allegations I used my reasonable accommodations to falsify my time & attendance records and violate telework policy.  LTC Goodman suggested I use this opportunity to discuss the hostile work environment with the IG.

**30 Sep 2013**

LTC Goodman required me to submit all my previous medical documentation – back to my original fitness for duty physical performed by the Army in conjunction with a previous request for reasonable accommodations that predated my hiring by the Veterinary Command in 2009 – in conjunction with my telework agreement allowing me an alternative work schedule.

**29 Oct 2013**

I included details of hostile work environment and harassment in my sworn statement to the IG per LTC Goodman's suggestion and the IG's concurrence.  Pls see attached.

**25 Nov 2013**

The IG notified me "all allegations against me were not substantiated".

**6 Dec 2013**

## SWORN STATEMENT

For use of this form, see AR 190-45; the proponent agency is PMG.

### PRIVACY ACT STATEMENT

| | |
|---|---|
| AUTHORITY: | Title 10, USC Section 301; Title 5, USC Section 2951; E.O. 9397 Social Security Number (SSN). |
| PRINCIPAL PURPOSE: | To document potential criminal activity involving the U.S. Army, and to allow Army officials to maintain discipline, law and order through investigation of complaints and incidents. |
| ROUTINE USES: | Information provided may be further disclosed to federal, state, local, and foreign government law enforcement agencies, prosecutors, courts, child protective services, victims, witnesses, the Department of Veterans Affairs, and the Office of Personnel Management. Information provided may be used for determinations regarding judicial or non-judicial punishment, other administrative disciplinary actions, security clearances, recruitment, retention, placement, and other personnel actions. |
| DISCLOSURE: | Disclosure of your SSN and other information is voluntary. |

| 1. LOCATION | 2. DATE  (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| Joint Base San Antonio, Fort Sam Houston, Texas | 2013/10/29 | 18:14 | |

| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS |
|---|---|---|
| HARRINGTON, Sandra Lynn Gossett | 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 | DAC GS-13 |

| 8. ORGANIZATION OR ADDRESS |
|---|
| Veterinary Services Central Fund, Animal Medicine Portfolio, AIPH, PHC, MEDCOM, US Army, at JBSA, Fort Sam Houston, TX |

9.

I, Sandra Harrington _____, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

- Allegation 1. LTC Goodman improperly permitted an employee to engage in an unapproved telework schedule in violation of DoDI 1035.01 (Telework Policy)

RESPONSE to Allegation 1:

I have been on a telework agreement as a reasonable accommodation under the ADA since Nov 10. When I interviewed for my current position with then MAJ (now LTC) Evans in Aug 09, we discussed that I had an autoimmune inflammatory disorder which could be degenerative and that Occupational Health had previously recommended I telework to some extent. Teleworking was not necessary when I joined then VETCOM in Aug 09, but by Oct 10 MAJ Evans and I agreed teleworking on alternate days might increase my ability to work consistently while taking less sick leave. I was put on VETCOM's telework agreement and given a Blackberry to keep in touch and to ensure I could work from home without the laptop if necessary. I have teleworked consistently since then to include working completely via telework for several months during CY 11 while recovering from the removal of a tumor from my spine. I have attached a copy of my current telework agreement and my evaluations since teleworking in case they are necessary to show that my performance has been more than satisfactory during my teleworking.

- Allegation 2. Ms. Harrington failed to use a government furnished laptop computer during telework in violation of DoDI 1035.01 (Telework Policy)

RESPONSE to Allegation 2:

I did not always use my government furnished laptop during telework as it wasn't always necessary; I was very functional for all but the longest compositions and complicated spreadsheets on my Blackberry. My laptop was unstable -- the hard drive became corrupted and had to be replaced repeatedly -- when being taken on and off the dock regularly, and our MIS support technician suggested I leave it on the dock as much as possible. I did leave it at the office occasionally and used the Blackberry instead as it is far easier for me to use. In the rare instances that the Blackberry or laptop wasn't usable - VPN or internet down, for example -- I used my personal cell phone and also had read, research, and review materials at home to work on instead. When COL Torring saw my laptop at the office and I was told to take it home consistently, I did, and the hard drive crashed and had to be replaced again a few days later. Since I no longer have the Blackberry - I lost it due to sequestration budget cuts despite it being a reasonable accommodation - I now keep the laptop with me when teleworking and use my personal cell phone for voice and text communication.

| 10  EXHIBIT | 11.  INITIALS OF PERSON MAKING STATEMENT | |
|---|---|---|
| | | PAGE 1 OF  5  PAGES |

ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF _____ TAKEN AT _____ DATED _____

THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED

DA FORM 2823, NOV 2006          DA FORM 2823, DEC 1998, IS OBSOLETE          APD PE v1 02

Item 8a. p. 2
29 Oct 2013
page 1 of 5

USE THIS PAGE IF NEEDED.  IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.

STATEMENT OF  Sandra Harrington          TAKEN AT  JBSA Ft. SamHouston  DATED  2013/10/29

9. STATEMENT  *(Continued)*

- Allegation 3.  Ms. Harrington improperly documented her time and attendance in violation of DoDI 7000 14-R Vol 8 Chapter 2 (Financial Management Regulation: Civilian Pay Time and Attendance.)

RESPONSE to Allegation 3:

As far as I know I document my time and attendance like everyone else here does:  I submit leave slips for the hours that I am unable to work; we do not submit nor see our actual time cards.  I have been doing this since I joined then VETCOM in Aug 09 and have never been told this was incorrect / insufficient.


BACKGROUND and INFLUENCING FACTORS/INFORMATION:

I believe the complaints leading to this investigation are part of an ongoing harassment campaign perpetrated by Theda Smith and MAJ Kelly Evans against me because of the reasonable accommodations given me due to my disabilities per the ADA.  The first I heard of these issues was in general terms from LTC Goodman in Feb 13, but I was unaware of written complaints until I saw the redacted Memorandum for Record during my second discussion with LTC Goodman in April 13.  The chain of events as best I know it is as follows:

First, in the Oct-Nov 12 timeframe Theda started questioning the validity of my telework agreement despite knowing it was a reasonable accommodation under the ADA.

Next Theda began going from cubicle to cubicle to my employees in my work area – with whom she has no official business – trying to solicit statements against me.  Those that refused to discuss me negatively with her were subject to harassment and were ostracized by the employees that did participate and some also had their performance of official duties called into question.  Theda was quite brazen and made no effort to hide this effort.

Theda then attempted to disrupt my use of the Blackberry for telework.  When the office secretary asked Theda if she had ensured my Blackberry was provisioned for the email migration, Theda responded that "if she doesn't have to come to work, I don't have to support her Blackberry".

In April, When COL Torring sent out an email indicating that he had reviewed all telework agreements in our offices and that all were in order, Theda responded by saying "Bullshit, Bullshit" so loudly that one of my employees resorted to wearing earplugs so that she could concentrate and continue working.

It was immediately after the above incident that I learned of the MFR submitted against me.  It indicated Theda had previously complained to COL Torring and detailed incidents she said occurred after talking with him.  I believe the dates were in the Feb – Mar timeframe.  I will address the ones I remember:

1.     I was not working and did not submit leave slips:  There is no reason anyone other than my supervisor, LTC Goodman, and my deputies would know my detailed schedule.  Theda would only know if I was not at my desk, and she should not have access to my timekeeping records except when she is functioning as the relief timekeeper.  Many times I have offsite meetings before or after my office time, and many times I am offsite or in a conference room to have an official conversation requiring privacy.  My leave records show an average of 10 hours taken per pay period; I faithfully take leave when I am not able to work my normal hours.  LTC Goodman and my deputies and I are in near constant contact when I telework via email and my personal cellphone.  Theda does not and would not have any need to reach me or know my whereabouts.

2.     Hiding my laptop:  I was not trying to hide when I was not taking my laptop home and using the Blackberry instead because I did it based on the advice of our MIS support POC.  Because I have limited workspace and do try to tidy up before I go home, I normally move my keyboard onto my docking station when I leave whether or not I have taken the laptop with me.

3.     I am not in the office when LTC G is gone:  Somewhat true: when LTC Goodman is going to be gone, he usually rearranges

INITIALS OF PERSON MAKING STATEMENT            PAGE  2  OF  5  PAGES

DA FORM 2823, NOV 2006                                                          APD PE v1.00



Item 8a p. 2
29 Oct 2013
page 2 of 5

| | | |
|---|---|---|
| STATEMENT OF **Sandra Harrington** | TAKEN AT **JBSA Ft. SamHouston** | DATED **2013/10/29** |

**9. STATEMENT** *(Continued)*

4.    I expect secrecy from my deputies:  Partially correct but misleading: Mr. Fisher, in particular since he deals with personnel issues, often calls me away from the cubicle farm to ensure necessary privacy.  He said he was intentionally misquoted on this.

5.    PHC is unaware of my teleworking:  Incorrect: my deputy Ms. Draper says she was intentionally misquoted on this.

6.    MAJ Evans saw "brown stuff" on my shoes and it smelled like feces:  I cannot confirm nor deny this, but it's odd NO ONE said anything about it to me at time.  However, I do have dogs and very little sense of smell, so it's not impossible.  The first I heard of any odor issues was from LTC Goodman in our Feb 13 discussion, and since that time I have religiously changed my shoes and clothing after leaving the house to ensure no possibility of me tracking or otherwise bringing feces into the office.  I was mortified to hear this complaint and cannot understand why someone would not have brought this to my attention when it happened.  The MFR alleges continuing odor issues and the writer was obviously not satisfied that I had not been sent home for them.

7.    I did not support one of my deputy's employee's teleworking:  Incorrect: the issue for the delay in the approval of the agreement was due to lack of a clear medical recommendation as to what hours she should be allowed to work and where and confusion over the approval process.

LTC Goodman and I discussed the issues and that this harassment based on my physical disabilities and reasonable accommodations per the ADA was creating a hostile work environment.

I contacted Ms. Case, our CPAC POC, and discussed the situation.  She said that she had never noticed an odor in our meetings but suggested I talk to Ms. Reiser, the CPAC APF Management Employee Relations POC.  Ms. Reiser said she detected an unpleasant but not unbearable odor in my presence.  I explained to Ms. Reiser that it must be medication related, and when she asked if I could change my medications to avoid it I told her it wasn't likely given the number and diversity of drugs I take.  I indicated the workplace environment had become hostile and I and my employees were being harassed due to my disabilities.  Ms. Reiser provided the names of the installation EEO and Employee Assistance POCs.  I attempted to contact the EEO POC but was unsuccessful: someone in her office did return my call but was repeatedly unable to schedule a conversation with her for me.

**AFFIDAVIT**

I,  **Sandra Harrington**                                                             , HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE     **5**     I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME.  THE STATEMENT IS TRUE.  I HAVE  INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT.  I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE OR UNLAWFUL INDUCEMENT.

*Sandra Harrington*
*(Signature of Person Making Statement)*

WITNESSES:

Subscribed and sworn to before me, a person authorized by law to administer oaths, this _____ day of _____, _____

at _____

_____

ORGANIZATION OR ADDRESS

_____
*(Signature of Person Administering Oath)*

William J. Bettin
*(Typed Name of Person Administering Oath)*

AR 15-6 Apointment Memo, 11 SEP13

ORGANIZATION OR ADDRESS                                      *(Authority To Administer Oaths)*

INITIALS OF PERSON MAKING STATEMENT

| | | | | |
|---|---|---|---|---|
| | PAGE **3** | OF | **5** | PAGES |

DA FORM 2823, NOV 2006                                                                APD PE v1.00

Item 8a. p.2
29 Oct 2013
page 3 of 5

**Statement of SANDRA HARRINGTON Taken at JBSA Ft. Sam Houston, TX Dated 29 OCT 2013**

During this timeframe my Blackberry was inactivated due to lack of funds, even though the G8 employee who teleworks unrelated to disability retained hers. I protested to LTC Goodman, but he said he couldn't support my keeping it as sequestration was supposed to suck (his word) and having the Blackberry facilitated me working too much. I could not argue that I did not use it constantly as the VSCF is a global business in 14 time zones and I believe it is my responsibility as fund manager to be available whenever I am needed; I am the equivalent of a Chief Financial Officer in the corporate world and would work much more than 40 hours a week were I there.

In May, Theda made it known to the entire office that she would not attend the going away party of one of my deputy's employees because she couldn't stand to be in the same room with me. She arranged a separate, private going away party for the employee and did not attend the official party.

Theda began spraying extra air freshener whenever I was in Mr. Fisher's cubicle because it is adjacent to hers. Mr. Fisher got sprayed in the face on one occasion and the fragrances gave him headaches. Theda also turned on a fan placed to funnel air away from her desk and toward mine every time she noticed I was at my desk.

COL Vogelsang called both my deputies and asked them very bluntly if I smelled so badly that they couldn't stand to work with me and asked about my effectiveness as a supervisor and my teleworking. Both deputies explained the odor was not unbearable and was due to my medications and explained that I am available whenever they need me, whether or not I'm teleworking. They both expressed concern that I was being bullied by Theda.

LTC Goodman noted Theda's increased presence in our work areas and instructed my deputies to encourage her to leave if her stays were lengthy. They did on various occasions.

On Monday, June 3rd, Mr. Fisher overheard Theda muttering "payback". On Friday, June 7th, COL Torring sent me home due to odor complaints as per Ms. Reiser's advice. I explained to COL Torring that the odor must be due to my medications as I was bathing with triclosan and washing my hair immediately before coming to work and changing my shoes and clothes after leaving the house to prevent bringing any remnants of dogs into the office with me. I explained I was also using several versions of Fabreeze on my clothing, washing both my clothes and my shoes on the sanitize setting, and further using enzymes that would destroy any odor causing bacteria present. LTC Goodman said he had noticed only the disinfectant smell of the enzyme solution. COL Torring said that if I thought the odor was medically related I should get a note from my doctor. Prior to my dismissal, I had been out of the office most of the morning and had been in the office secretary's cubicle only when I returned, but as soon as I left Theda immediately went into the office secretary's cubicle and started whispering; they must have been the primary complainants. I explained to COL Torring that I believed this was harassment by Theda intentionally intended to cause a hostile work environment for me due to my disability. LTC Goodman escorted me out of the building.

On Monday, June 10th, I presented Dr. Scott's note to COL Torring.

On Wednesday, June 12th, MAJ Evans stood up and sprayed disinfectant directly into my cubicle, hitting me in the face, and Theda appeared in MAJ Evan's cubicle immediately afterward. I stopped by COL Torring's office prior to leaving for the day to notify him of the incident. He said he detected an overall musty smell and checked to see if it was coming from my shoes, computer bag, or shirt; he said it was not and agreed it must be related to my medication. He said he would talk to Ms. Reiser to see what needed to be done reference employees who were sensitive to smells.

On Thursday, June 20th, Theda held her nose during COL Torring's presentation when she realized I was in the room. When the training was over she rushed out still holding her nose; several employees noticed

Initials of Person Making Statement: _____(SH)_____          Page 4 of 5 Pages

Item 8a. p.2
29 Oct 2013
page 4 of 5

**Statement of SANDRA HARRINGTON Taken at JBSA Ft. Sam Houston, TX Dated 29 OCT 2013**

both dramatic actions. I emailed COL Torring to request Theda and I not be in the same room at the same time as her behavior was very obviously directed toward me and was extremely embarrassing and humiliating. Mr. Fisher overheard Theda telling the office secretary while the office secretary was at Theda's desk that "I'm going to put an end to this today" and then Theda began typing furiously. I suspect she was generating another complaint.

On Wednesday, June 26th, LTC Goodman noted the odor seemed to be directly related to my perspiration and generally not present otherwise. That afternoon COL Torring called me into his office to present the letter requiring further medical explanation of the possible causes of the odor. He said he detected no odor at the time but that he was forced to follow Ms. Reiser's advice. Dr. Huff's office provided the second doctor's note o/a July 2nd.

On Wednesday, July 10th, I talked to SFC Combs as she was our sexual harassment coordinator and I hoped she could assist me in resolving the harassment and hostile work environment issues. She was very attentive and told me after researching the issue that an EEO complaint was likely the best course of action since I am a civilian. Hoping to avoid filing an official complaint and to resolve the issue more directly, I requested CPAC set up a meeting with Ms. Reiser, COL Torring, LTC Goodman, and me. The official response was that Ms. Reiser could meet with management and/or meet with me but a single meeting with everyone would not be scheduled.

Thursday, September 26th, I was notified of the IG complaint.

Friday, September 27th, MAJ Evans began wearing an allergy mask whenever she noticed I was in the office. She continues to spray disinfectant as well. Theda continues to spray air fresheners and turn her fan toward my cubicle whenever she notices I'm in the office.

On Thursday, October 24th, I responded orally to LTC Bettin, the AR 15-6 investigating officer. I expressed my concern that this investigation is part of a larger pattern of harassment toward my disabilities and the reasonable accommodations associated with them under the ADA and that it is creating a hostile work environment for me and my employees. He advised that I could submit supplemental information I feel is relevant to the investigation.

On Tuesday, October 29th, today, I am responding in writing to LTC Bettin per his request.

I am concerned that once this investigation is over Theda, MAJ Evans, and their cohorts will find other ways to threaten, embarrass, and/or humiliate me and to continue creating a hostile work environment for me and my employees. I have not yet filed an EEO complaint and hope to avoid it as I believe it would be detrimental to the VSCF team as a whole, and my duty above all is to protect the fund. However, something needs to be done to end the constant harassment as it is negatively affecting the morale of all the VSCF employees being attacked.

I am five weeks away from completing my 30th year of service to Army NAF, and during those years I have been ultimately responsible for hundreds of millions of NAF dollars and hundreds of facilities and employees. I am the professional COL Rolfe, VETCOM Commander, entrusted to establish and manage this fund based on my then 25 plus years of unique NAF experience, and I have given my heart and soul to execute his vision then and PHC's now. COL Rolfe said he wasn't concerned about when or where I worked so long as I accomplished the mission, and I took on the challenge of this position based on the assurance that teleworking if necessary eventually would not be an issue; to now be vilified because of physical disabilities which in no significant way affect my performance as the NAF Veterinary Services Central Fund Manager and to have my integrity and dedication questioned is disparaging beyond belief.

Initials of Person Making Statement: _____

Page 5 of 5 Pages


Item 8a. p.2
29 Oct 2013
page 5 of 5

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8a. SPECIFICS OF CLAIM

COL Webb announced the relocation of our offices to Aberdeen Proving Ground (APG),
MD, and stated COLs Honadel and Torring and LTC Goodman had been and would
continue to be on the transition planning team.  Immediately after the announcement, I
was told by LTC Goodman that my current reasonable accommodations would not be
continued upon the transfer.  I asked COL Torring if this was correct, and he confirmed
it, but then they both assured me I would be eligible for Discontinued Service
Retirement.  I took this to mean that there was no point in asking for continuance of my
current reasonable accommodations upon transfer to APG but did not file an EEO
complaint against the lack of interactive process or failure to accommodate at the time
because I had been assured I would receive Discontinued Service Retirement instead
of being required to transfer.

**18 Apr 2014**

I responded to the unofficial canvas letter that I likely wouldn't be physically able to
relocate and requested the reasonable accommodation of continued tele- and remote
site work.  This did not generate an interactive process as it should have.

**22 May 2014**

COL Honadel held a Town Hall meeting and told me that although I wasn't eligible for
Discontinued Service Retirement, I was qualified for Severance Pay.

**16 Jun 2014**

COL Honadel issued Transfer of Function letters to which I responded I would accept
the transfer "contingent upon approval of RA request (which clearly indicated I was
making the request because I had already been told accommodations at APG would not

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8a. SPECIFICS OF CLAIM

be possible) not to physically relocate and to telework from home or from FSH as long as possible." Again, this generated no interactive process. Also, the form stated "I understand that if I choose not to exercise my entitlement to transfer with my function and if I am not eligible to choose optional or early retirement before my separation, then I may be separated under adverse action procedures". It is clear from this statement that Termination for Adverse Action in my case was inappropriate as it was later determined I was eligible for Early Retirement at a minimum.

**18 Jun 2014**

COL Honadel stated PHC did not allow offsite reasonable accommodations such as telework, and I was told I was not eligible for Severance Pay because I was eligible for Early Retirement. I immediately requested retirement information and discussed COL Honadel's remarks with the Medical Command (MEDCOM) EEO office as blanket prohibitions on reasonable accommodations aren't in keeping with the Rehab Act.

**23 Jun 2014**

I submitted my official request for reasonable accommodation which clearly stated: "When discussing the matter with COL Honadel during his recent visit, he said that relocating in and of itself would not be a solution as PHC does not consider telework a reasonable accommodation and that I would not be able to continue my current telework schedule once there even if I could relocate". At no point did COL Honadel refute he said this to me or offer to discuss the possibility of being accommodated at APG with me.

**16 Jul 2014**

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8a. SPECIFICS OF CLAIM

LTC Takara requested additional medical information despite copious amount on file indicating my conditions were numerous, severe, and degenerative.

**8 Aug 2014**

Dr. Oliverson's, Occupational Medicine Service, US Army, evaluation letter as requested by LTC Takara stated: *"Ms. Harrington has several serious medical conditions. These are chronic and progressive illnesses. They are very unlikely to resolve and will more that likely continue to worsen in severity and cause even more disability. These conditions make it difficult for her to prepare for, travel to, and be at work in the office and as such support her performing telework as much as is possible/practical. ... In my opinion, it would be inadvisable for Ms. Harrington to relocate. ... The real question here is whether or not the organization can tolerate and function effectively with an employee who is teleworking full time and is not able to come to work in the office at any time. If so, it makes no difference where the employee lives. If not, it is an undue hardship on the organization and is an accommodation that cannot be granted."*

**9 Sep 2014**

LTC Takara denied the reasonable accommodation request stating: "Based on Dr. Oliverson's medical determination that you can physically relocate and the need to have you on site at Aberdeen Proving Ground with the rest of the organization, I am denying your request. ... Once you have relocated to Aberdeen Proving Ground, I would fully consider approving telework under the conditions of the telework policy which limits telework to one day per week and on an ad hoc basis based on medical conditions and

needs." He then provided POC information for voluntary and Disability Retirement options. Note my reasonable accommodations at the time included a minimum of 2 days of teleworking per week and extreme flexibility in terms of when I worked my in-office hours. Also, again, there was no interactive process in attempting to find a mutually agreeable resolution.

**19 Dec 2014**

COL Honadel denied my appeal of LTC Takara's reasonable accommodation denial and stated: "I have determined that the duties of your position and your role within the command make it necessary for you to physically report for duty at Aberdeen Proving Ground, Maryland." Based on his decision, I submitted new Employee Response: Acceptance/Declination of Transfer of Function Right changing my response to NOT accept the transfer so that I could enroll in the Priority Placement Program. The form clearly stated: "I understand that if I choose not to exercise my entitlement to transfer with my function and if I am not eligible for and choose optional or early retirement before my separation, then I may be separated under adverse action procedures set forth in 5 CFR, Part 752, on or before 31 March 2015.

**22 Dec 2014**

In keeping with the ADA / Rehab Act's listing reassignment as the last resort if reasonable accommodations can't be made, I requested COL Honadel reassign me to any similar position available.

**23 Jan 2015**

COL Honadel sent me proposed NAF reclassification of my position. If utilized, it would have abolished my GS position and definitely qualified me for Discontinued Service Retirement.

**30 Jan 2015**

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8a. SPECIFICS OF CLAIM

I was finally registered in the Priority Placement Program with clear indication of the reasonable accommodations necessary for me to work, but I was advised my registration would immediately be cancelled if / when I applied for Disability Retirement.

**2 Feb 2015**

Precomplaint interview with Ms. Barnes, FSH EEO office.

**6 Feb 2015**

Ms. Tina Allen, Chief, PHC Resource Management, deleted my request to work in her organization without response even though she had employees working remotely from San Antonio and at least one of them routinely teleworked for NON-medical reasons.

**25 Feb 2015**

Final complaint interview with Ms. Barnes, FSH EEO office.

**6 Mar 2015**

Notice of Right to File a Formal Complaint received from FSH EEO office.  I contacted Ms. Barnes and she stated no offer of settlement had been made, so I proceeded with filing the formal complaint.

**11 Mar 2015**

Ms. Jordan, Non-Appropriated Fund Portability Program Manager, confirmed receipt of my Disability Retirement application; the application included all required forms plus all requests for reasonable accommodations and denials and Occupational Health's assessment of my condition. _**Note this is a separate retirement fund – in no way related to Civil Service or the Office of Personnel Management that normally oversees Civil Service retirements – which is solely under the authority and control of the U.S. Army.**_

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8a. SPECIFICS OF CLAIM

**13 Mar 2015**

FSH EEO office acknowledged receipt of my formal complaint.  Note this is <u>before</u> the Notice of Proposed Removal and the denial of my NAF Disability Retirement application.

**16 Mar 2015**

I sent Ms. Jordan e-mail requesting the status of my Disability Retirement application but received no response.

**23 Mar 2015**

Ms. Reiser called me at 16:45, clearly at her end of day, to come to her office to sign paperwork tomorrow afternoon.  I express my concerns that this was odd as COL Honadel has been on site all day and not mentioned any paperwork, but she said this was normal.

**24 Mar 2015**

I signed and picked up Notice of Proposed Removal from Ms. Reiser which was signed and dated by COL Honadel the previous day.  Ms. Reiser said it allowed 30 days for approval of my Disability Retirement application but that she hadn't been able to get in touch with Ms. Jordan to coordinate.  I immediately sent a copy of the Notice to Ms. Jordan and indicated Ms. Reiser had been unable to contact her, copied Ms. Reiser, and again requested an update on the status of my Disability Retirement application.

**26 Mar 2015**

I called Ms. Jordan on the status of my Disability Retirement application.  She informed me that it was denied on 17 Mar – after I filed my formal EEO complaint but before the Notice of Proposed Removal-- and CPAC HR (which included Ms. Reiser) was sent notification and a hard copy (which I never received) was sent to me.

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8a. SPECIFICS OF CLAIM

Ms. Jordan then emailed me a copy and also copied Ms. Reiser. The email stated: "Good Morning, attached is Ms. Harrington's Disability Retirement determination. However, she is eligible for Early Retirement. Have a great day!" Note Early Retirement is greatly reduced compared to Disability Retirement. The attached denial specifically stated: "Your doctor stated that you are able to hold employment and telework, therefore, you are not eligible for total and permanent disability under the US Army NAF Retirement plan." THIS IS NOT WHAT MY DOCTOR WROTE. My doctor checked the application for: "***Class 5 – Severe limitation of functional capacity / incapable of minimal (sedentary) activity (75-100%)***" and stated on the application and in the narrative attachment: ***"Patient's inconsistent ability to function & to predict functionality in advance prohibits normal work arrangements ... She cannot consistently and predictably function well enough to work ... Ms. Harrington has been teleworking as a reasonable accommodation under the ADA since Nov 10 (2010). The ability to telework in combination with a flexible schedule allow her to remain effective in her position. However, under a reorganization her new chain of command has refused to continue her accommodation ... Her conditions at this time remain progressively degenerative; her prognosis is poor and unfortunately there is no anticipation of improvement or even stabilization. Without continuation of her current reasonable accommodation which in effect allows her to work when an where she is able, she cannot continue working."*** I asked if further clarification from my physician would be helpful as he clearly had been misunderstood, and she said, no, the decision had been made. I asked for appeal options and she said there was no official appeal process. I asked if there was a supervisor to whom I could appeal, and she said it might be hers, but she declined to give me contact information and said that any request for appeal should be sent back to her. I could not determine who had actually evaluated my application as Ms. Jordan is the NAF Portability Manager and the AR 215-3 indicates Disability Retirement applications are to be approved or denied by the NAF Benefits Program Manager.

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8a. SPECIFICS OF CLAIM

**30 Mar 2015**

I emailed my response to the Notice of Proposed Removal to COL Honadel and copied Ms. Reiser stating: "My first request is that I remain actively employed thru 30 April so that my retirement – whatever form that takes – can be effective at the end of the month and I will have the least lapse in compensation; that will allow me to be paid as an active employee through the end of April and as a retiree beginning 1 May. My second request if that the Notice of Proposed Removal be amended to grant me eligibility for Discontinued Service Retirement ..."  I never received a response.

**13 Apr 2015**

Ms. Reiser and Ms. Jordan inquired as to my retirement date; I indicated I was awaiting an official response from COL Honadel ref the Discontinued Service Retirement request in my response to the Notice of Proposed Removal.

**17 Apr 2015**

Ms. Jordan inquired again as to my retirement date and again I indicated I was awaiting a response from COL Honadel.

**23 Apr 2015**

COL Honadel sent my 30 Mar 2015 response listed above to Ms. Reiser, copied Heather Masten, MEDCOM Legal Review & Agency Representative on my complaint and stated: "This is the email she sent to me with her official response. Please let me know if you need anything else. I am currently out of the office and won't be back in until Monday." Note I discovered this later; I still had not received a response to this same request.

**27 Apr 2015**

Having received no "read" receipt or response from COL Honadel regarding my response to the Notice of Proposed Removal, I resent it with a copy to Ms. Reiser among others and the following statement: "Resending as I have received no "read" receipts or responses. Again, if I am to retire it needs to occur at the end of the month to prevent a lapse of pay and benefits as retirement benefits are paid at the beginning of the month following retirement, and the end of this month is only 3 days away. Otherwise, I would need to work through the end of May and then retire. Here is the original message that apparently didn't make it through:" Ms. Reiser called at 16:22 to indicate response would be available for pickup at her office at 14:00 the next day.

**28 Apr 2015**

I picked up the Notice of Decision – Removal at 14:00; it was effective 30 Apr 2015, barely 48 hours later. Attached to it were appeal rights and an Adverse Action Checklist signed by COL Honadel which stated: "Ms. Harrington also applied for Disability Retirement (under her NAF retirement system), but that application was denied on March 17, 2015 because she was still able to work. Unfortunately, she does not qualify for Discontinued Service Retirement and/or Voluntary Early Retirement (VERA). Accordingly, the remaining option is removal from federal service for failing to accept the transfer." Note this is blatantly incorrect; the Agency, and Ms. Reiser, in particular, who obviously prepared this response for COL Honadel's signature, was well aware I was eligible for NAF Early Retirement. However, rather than "separate" me due to retirement, the Agency CHOSE to "terminate" me as an adverse action knowing full well, as I reiterated in previous emails, that it would disrupt my pay and benefits. *In particular, this terminated my medical and & health benefits causing me to forego medications and previously scheduled surgeries.* I immediately contacted Ms. Barnes to include Termination as Adverse Action in my EEO complaint and then contacted Ms. Jordan to proceed with NAF Early

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8a. SPECIFICS OF CLAIM

Retirement as it was my only option at the time to prevent a break in service which would permanently terminate my medical & health benefits.

**29 Apr 2015**

I received the amendment to the EEO complaint including improper termination and signed and returned it immediately.

**30 Apr 2015**

I received eOPFs (personnel actions) indicating I was ineligible for continued life or health insurance benefits due to adverse action termination and contacted Ms. Reiser and Ms. Jordan immediately. Because my removal was processed as a Termination for Adverse Action, my medical & health benefits were cancelled until the Termination for Adverse Action could be changed to Separation for Retirement by Ms. Mick several weeks later. In the meantime, I was forced to forego previously scheduled surgery and ongoing medical treatment including daily medications due to lack of health insurance. The stress of the situation so weakened my immune system that I broke out in shingles two weeks later. I can find no legitimate, non-discriminatory other reason and believe it was retaliatory for my EEO complaint. THIS WAS CLEARLY PUNITIVE AND ENTIRELY AVOIDABLE AS IT WAS DUE SOLELY TO THE AGENCY'S CHOICE TO PROCESS MY REMOVAL AS A TERMINATION FOR ADVERSE ACTION RATHER THAN THE APPROPRIATE SEPARATION FOR RETIREMENT. The termination on effectively 48 hours' notice with the necessity of completing retirement paperwork and out processing left me NO time to collect documentation / evidence, particularly e-mails, related to the most recent hostile workplace environment and incidents of harassment and discrimination. It also left me NO opportunity to appeal the denial of my NAF Disability Retirement application before I was forced into NAF Early Retirement in order to preserve my medical and life insurance benefits.

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8a. SPECIFICS OF CLAIM

**27 Jul 2015**

I received a Scheduling letter from Mr. Zachas, Investigator

**28 Jul – 11 Sep 2015**

I contacted Ms. Barnes, FSH EEO office, regarding why the denial of my NAF Disability

Retirement and Termination for Adverse Action was not specifically being investigated as part of

my complaint per the scheduling letter.  After much discussion, it was determined the NAF

Disability Retirement denial was included as requested in a timely manner 3 Apr 2015, but,

because Ms. Barnes thought OPM and not the Agency controlled my retirement (normally this is

the case, but not for me since I retained Army NAF retirement; in my case, Army NAF

determines my retirement benefits), it was not added to my actual list of complaints.  It was also

determined that the Termination for Adverse Action should be investigated as part of the Notice

of Removal.  After more discussion of how specific complaints should be and what can and

cannot be investigated without amending the complaint per Mr. Zachas, Ms. Barnes assisted

me in amending my complaint to specifically include the items I was concerned were not being

addressed to include retaliation.  She stated as soon as I signed the amended complaint, she

would generate a new letter to Mr. Zachas so that he could investigate the items I was

concerned were not being included.  However, this never happened; see below.

**19 Aug 2015**

I provided Mr. Zachas an email summary of the case from my perspective.

**24 Aug 2015**

I sent all documentation related to the denial of my NAF Disability Retirement and my

Termination for Adverse Action to Mr. Zachas; he confirmed receipt and included it in the case

file.

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8a. SPECIFICS OF CLAIM

**26 Aug 2015**

My telephonic interview with Mr. Zachas clearly indicated he was not investigating all the issues I expected to be investigated.  Per Mr. Zachas' suggestion, I contacted Ms. Barnes and submitted another signed amendment to my complaint and copied Mr. Zachas.

**27 Aug 2015**

I submitted a detailed narrative clarifying my complaints to Mr. Zachas and Ms. Barnes based on the interview I had with Mr. Zachas the day before. In my Declaration Under Penalty of Perjury ref the preceding day's interview, I repeated the summary I had previously provided in the 19 Aug 2015 email to Mr. Zachas and commented on the interview and the concerns it raised for me that all my issues related to the case were not being fully investigated.

**28 Sep 2015**

I submitted list of witnesses and their POC info to Mr. Zachas:  3 former employees who could attest to the harassment and hostile work environment (including Ms. Shiepko) and LTC Goodman and COL Torring who could "attest to the harassment and hostile work environment as well as the issues with my reasonable accommodations and resulting discrimination; note while they were there I was told I would not be able to continue my reasonable accommodations at APG but I would be allowed Discontinued Service Retirement instead.  They can also attest to PHC's failure to provide the policy on reasonable accommodations so that I could formalize my request; it was due to their suggestion that I finally got the DA RA policy from MEDCOM. They can also attest to the misinformation I was given that I would receive Severance Pay in lieu of the Discontinued Service Retirement." However, LTC Goodman (now retired) and COL (now BGN) Torring (now retired) were never interviewed.  Ms. Shiepko's testimony 25 Oct 2015 as indicated in the Investigator's final report is incomplete; she also stated:  Do you believe she (complainant) was denied the request (to remain at Ft. Sam and telework) based on her medical

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8a. SPECIFICS OF CLAIM

condition? Yes. By COL Honadel. In my interactions with him it was either his way or not, all or nothing. None of the reasons made sense. … Do you have any reason to believe LTC Takara or COL Honadel subjected Complainant to a hostile work environment? I think that knowing the conditions of the office before they got there and the actions of people before then (see comment on how Complainant was harassed, below), requiring her to make multiple trips to the doctor for paperwork she already had created a stressful and hostile work environment. Do you have anything further so add that may be helpful in this investigation? I saw harassment directed at her based on her disability by a MAJ Kelly Evens, and a handful of civilians but not anything by LTC Takara or COL Honadel because they were geographically separated." Also, the Investigator states in the Declaration with Ms. Shiepko that "The Complainant contends LTC Takara and COL Honadel subjected her to a hostile work environment (by asking for additional medical documentation and delaying decision to place her under a priority placement program)." This is the Investigator's interpretation of my definition of the hostile work environment, not mine; my definition of the hostile work environment, as detailed in my response to the IG AR 15-6 investigation created against me by the employees who were in fact creating the hostile work environment and on file at PHC, is in keeping with Ms. Shiepko's last comment listed above. The asking for additional medical information when there was already a complete file in their office of 5 years' worth of validation of my disabilities and need to telework, including validation by Occupational Health, I considered harassment and created an unnecessary delay in processing my request(s).

**29 Sep 2015**

Ms. Barnes sent email to Mr. Zachas as a response to his request for clarification as to whether or not the additional incidents had been accepted for investigation. Ms. Barnes stated: "Maria had a relook and it has been sent back to Ms. Masten." ___Ms. Masten, the Agency Representative in this case, reviewing EEO documents was clearly a violation of EEOC___

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8a. SPECIFICS OF CLAIM

*__Management Directive 110, Chapter 1, IV Avoiding Conflicts of Interest, D. Separation of__*
*__EEO Complaint Program from Agency's Defensive Function, which states; "At a__*
*__minimum, however, the agency representative in EEO complaints may not conduct legal__*
*__sufficiency reviews of EEO matters. Legal sufficiency reviews in the EEO process involve__*
*__legal analysis made by the EEO office during the processing of EEO complaints, such as__*
*__acceptance/dismissal of complaints, legal theories utilized by the EEO office during__*
*__investigations, and legal determinations made in final agency actions. The optimal__*
*__situation is for the EEO office to have sufficient internal legal resources. However, when__*
*__necessary and requested by the EEO office, legal sufficiency reviews conducted outside__*
*__the EEO office must be handled by individuals that are separate and apart from the__*
*__agency's defensive function."__* On this same day, Ms. Preda sent a memorandum to the
Investigations & Resolution Directorate (Mr. Zachas) acknowledging and attaching my requests
to amend my complaint and "requesting consideration for inclusion of these incidents in the
investigation" and stating "if that is not possible, complainant has the right to present her
concerns to the EEOC to either (a) the Administrative Judge where it is under his/her jurisdiction
or (b) EEOC Office of Federal Operations on appeal if a hearing has not been requested." The
end result of not having a modified acceptance letter to clearly state the claims as I repeatedly
requested (see below), is, that although technically they are included per Ms. Masten's legal
sufficiency review and Ms. Preda's memorandum to the Investigations and Resolution
Directorate, they are NOT clearly and individually listed in any documents readily available and
normally reviewed in an EEO case and thus were not addressed individually and specifically by
the Agency (although Ms. Masten was obviously aware of them since she prevented their
inclusion in a new acceptance letter by indicating it was unnecessary since they were part of the
continued claim; see below) or the EEOC.

**1 Oct 2015**

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8a. SPECIFICS OF CLAIM

Ms. Preda sent an email to Mr. Zachas as a response to his request for clarification as to whether or not the additional incidents had been accepted for investigation.  Ms. Preda stated ***"Incidents were not accepted since they are part of the continued claim."***

**5 Nov 2015**

In my Declaration Under Perjury, I reiterated my concerns that all issues regarding my complaints were not being addressed and again listed them specifically and individually:

(1)  failure to properly classify my position,

(2)  failure to comply with DA reasonable accommodation policy to include failure to continue my then current reasonable accommodations or provide alternative reasonable accommodations,

(3)  improper denial of Discontinued Service Retirement,

(4)  improper denial of NAF Disability Retirement, and

(5)  involuntary adverse action removal on 2 days' notice rather than allowing me an orderly retirement.

**3-4 Mar 2016**

I submitted an appeal of the denial of my NAF Disability Retirement to Mr. Heuer, Chief, NAF Personnel Services.  It contained Social Security's approval of my disability benefits dating back to 30 April 2015, the date of my termination, as well as additional info submitted to Social Security in support of that application and an updated NAF disability retirement application to support the appeal.  I am attaching my memorandum stating reasons for the appeal and its timing, the regulation detailing the eligibility requirements, and LTC Goodman's statement as submitted to Social Security and included in the appeal as it was referenced later.  Please see the attachments for the details as they are far too much to retype.

**SH**

| | |
|---|---|
| **From:** | SH <sh.personal@yahoo.com> |
| **Sent:** | Friday, March 4, 2016 2:33 PM |
| **To:** | Ronald.K.Heuer.NAF@Mail.Mil |
| **Cc:** | sh.personal@yahoo.com |
| **Subject:** | Appeal of Denial of NAF Disability Retirement (see attached) |
| **Attachments:** | sandra harrington naf disability denial appeal packet to mr ron heuer.pdf; sandra harrington updated EBB Form 766-R submitted in conjunction with appeal of initial denial.pdf |

| | |
|---|---|
| **Importance:** | High |

Sir,

Please see attached and contact me for any further information required at this email address or (210) 663-6278.

Many thanks ~

Sandra Harrington

Item 8a. p. 17
3-4 Mar 2016
page 1 of 8

TO:         Mr. Ronald K. Heuer
            Chief, NAF Personnel Services Division & NAF Benefits Program Manager
            Department of the Army
            Attn:  NAF Employee Benefits Office
            2455 Reynolds Road
            JBSA Fort Sam Houston, TX  78234

FROM:       Sandra Harrington
            Portability Employee Retired Under NAF
            219 Broken Arrow
            Floresville, TX  78114
            SH.Personal@Yahoo.Com; (210) 663-6278

DATE:       4 March 2016

SUBJECT:    Appeal of Denial of NAF Disability Retirement

Sir, please see included attachments and below.

**I am appealing because:**

(1)  In accordance with the AR 215-3 in effect at the time, I was "unable to perform useful and efficient service in his (my) position or any other position offered by the employer of the same grade or class". The Reasonable Accommodations (RAs) per the Rehab Act and under which I had been able to maintain employment the previous 4 years ceased with the TOF and I was not offered continuance of them in conjunction with the required relocation. I requested reassignment to any other position in which I could be granted continuance of my RAs but was denied as there existed no position(s) in which anyone was willing to grant me both the flexibility of scheduling and ability to telework from home that was necessary for me to successfully work. This has been further validated by the fact that I have been on both MEDCOM's and the Army's Priority Placement Programs for a year now and have received zero referrals despite my qualifications because no one is willing to allow me to work whenever, wherever, or however long at a time I can to accommodate my disabilities and limitations. I additionally checked with IMCOM and was told no positions existed there that would allow my then current RAs. I have also attached a statement from my last on site supervisor stating the nature of the RAs, the difficulties they caused in the workplace, and an indication as to why they were not continued as part of the TOF.

(2)  The denial I received was from Ms. Jordan, the Portability Program Manager, and does not contain any reference or indication it was actually determined by the Benefits Program Manager in accordance with the AR 215-3.

(3)  The denial letter indicated "your doctors stated that you are able to hold employment and telework" which is incorrect (see highlights on his statement included in the attached original application) as he stated "she cannot consistently and predictably function well enough to work". I asked if he could provide a clarification as he clearly did not intend for his statements to be misinterpreted that way -- he was clear that I could not work unless I was allowed Reasonable Accommodations that would allow me to work "when and where she is able"; the nature of my RAs was both teleworking from home and extreme flexibility in when and how long I could work at any given time and place, and no one then or since has been willing to allow me to work under those circumstances – but I was told that was not possible as the denial was final.

**I did not appeal the denial initially because:**

(1)  Ms. Jordan indicated that there was no formal appeals process and declined to provide me the contact information of her supervisor. She stated any appeal would need to be sent through her, and that seemed unlikely to be successful at the time. Also,

(2)  During this same time period, I had a pending request for Discontinued Service Retirement (DSR) to COL Honadel in conjunction with my Notice of Proposed Separation, and DSR is obviously preferable to Disability Retirement. I was given no advance notice of his denial of my request for DSR and instead received the denial in my termination notice received 28 April 2015 and effective 30 April 2015. This left me no time to appeal the NAF Disability Retirement denial as I was forced to accept NAF Early Retirement (severely reduced due to my age) in order to keep my medical benefits in effect. *I do sincerely and absolutely appreciate Ms. Jordan's and Ms. Mick's exceptional and outstanding efforts which eventually resulted in my receiving my NAF Early Retirement and in reinstating my health and life insurances; their work on this was beyond commendable as the APF HR POCs were not necessarily as responsive / timely as they could have been or as was needed under the circumstances. Again, my gratitude to both Ms. Jordan and Ms. Mick for their assistance!*

**I am appealing now because** my formal EEOC complaint which requests DSR has progressed to a pending administrative hearing but is proceeding so slowly that I have exhausted my retirement and savings accounts and am not be able to survive on my very limited early retirement pension alone due to my excessive medical expenses. Because resolution of my entitlement to DSR is not expected at any time in the very near future, I am requesting reconsideration of my initial request for NAF Disability Retirement / appealing my denial. I am also attaching an updated EBB Form 766-R in case that is necessary or might in some way expedite the process ~ MANY THANKS!

*Sandra Harrington*

Item 8a.p17
3-4 Mar 2016
page 2 of 8

use of VERA must result in one employee saved from separation for each early retirement. Requests for VERA, submitted through command channels to HQDA (DAPE-CP-NAF), must show these savings.

*b.* DSR authority is obtained from the installation commander with payment to CFSC–HRB, when a position has been abolished and the incumbent is facing involuntary separation through BBA.

*c.* The expense of the VERA or DSR will be paid by the employing NAFI. To determine specific expenses, commanders may contact CFSC–HRB.

*d.* To be eligible for VERA or DSR employees must:

(1) Have participated in the retirement system for at least one year within the two year period immediately preceding this separation or retirement; and

(2) Have attained age fifty with twenty years of credited service, as defined in para 15–21, or be any age with completion of twenty-five (25) years of credited service.

*e.* For each month benefits commence prior to the month in which the participant reaches age fifty-five (55), the basic annuity is reduced one-sixth of one percent from benefits which would otherwise have been payable at age sixty-two (62) or later.

## 15–25. Requesting retirement benefits

*a.* Employees will inform the CPAC/NAF–CPU of their retirement date 30 days in advance or as soon as possible.

*b.* The CPAC/NAF–CPU will verify employee eligibility for retirement benefits, and assist the employee in completing DA Form 3715.

*c.* An estimated benefit will be calculated based on credited service and high three average:

*d.* The estimated benefit will be provided the retiree during the period required for the determination of regular benefit option. Retirement benefit options will be provided to the retiree for a final and irrevocable election. The retiree will select an option and return the completed retirement benefit option papers to the Program Manager within 45 days of receipt. The estimated benefit will stop and the regular benefit will begin the first of the month following receipt of the retirement option papers by the Program Manager. Adjustment will be made for any discrepancy between the regular benefit and the estimated benefit already paid.

*e.* Information on the Retiree Medical Insurance Plan or the 18 month extended coverage will be provided to the retiree with the retirement option form.

*f.* Retirees who participated in the group life insurance program for five years immediately preceding retirement will be provided with a continuation of life insurance certificate provided they elect an immediate annuity.

*g.* Additional credited service is given for unused SL in computing normal and early retirement benefits (see para 15–21d and table 15–1.)

*h.* The date of retirement and the date of separation are the last day an employee is in a pay status. Estimated benefit payments will begin on the first day of the month after an employee separates or retires.

## 15–26. Disability retirement and survivor benefits

*a.* An employee who participates in the retirement plan and has reached age 52, or has 5 years of credited service, is eligible to request a disability benefit under the plan if while employed the employee becomes unable to perform useful and efficient service in his position or any other position offered by the employer of the same grade or class. Disability is determined by the Benefits Program Manager based on the advice of qualified medical authority. The disability must be determined to be total and permanent.

*b.* Applications for disability benefits should be initiated as soon as possible, but in all cases application for disability benefits must be submitted within 60 days after the employee's separation.

*c.* In certain instances, a normal or early retirement benefit may provide the retiree with a larger benefit. When this is the case, the Program Manager will determine the greater benefit and provide this information to the retiree.

*d.* Employees receiving a disability retirement may be eligible for one year of free medical insurance if they were participating in the DOD NAF HBP preceding the disability retirement. Employees in a non-contributing LWOP status are not eligible for this benefit.

*e.* A survivor benefit is payable to the spouse of a participant who has 5 years of credited service under the plan and who dies while actively employed. The spouse must have been married to the employee for at least 1 year immediately preceding the employee's death.

*f.* The benefit is payable upon receipt of a completed DA Form 3715, a certified death certificate (outside the United States, a notice of the death of the participant), and verification of the date of marriage and dates of births as evidenced by—

(1) Any legal form or certificate.

(2) A life insurance policy at least 5 years old in which ages are recorded, or the survivor is named as the legal spouse, or both.

(3) A certified copy of a page from the family Bible.

(4) Age shown on a naturalization or school paper.

Item 8a. p.17
3-4 Mar 2016
page 3 of 8

**Social Security Notice**

From:  Social Security Administration

SANDRA LYNN HARRINGTON
212 BROKEN ARROW
FLORESVILLE TX 78114

Date:            APR 2 2 2016

Social Security Number: 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

You must meet certain medical and non-medical requirements to be entitled to disability payments.

We have found that you meet the medical requirements for disability payments.  An explanation of our findings is attached.  Please read it carefully.

We have not yet made a decision about whether you meet the non-medical requirements, but we will make that decision soon.  Then we will send you a second notice explaining our decision.  After you receive this second notice you will have 60 days to appeal the determination we made about your claim for disability payments.

If you have any questions about your disability claim or wish to appeal our findings, please do not get in touch with the Social Security office until you have the second notice.  The people at the Social Security Office will be better able to answer your questions when they have the information from both notices.

After you have received your second notice, you can call or write any Social Security Office to appeal our determination or to get answers to your questions.  Most questions can be handled by telephone or mail.  If you go to the Social Security Office in person, please take both notices with you.

cc:
   Sti

D: 1157P
CHIRPS

Form SSA-L1157-U2-DI (4-83)

Item 8a.p.17
3-4 Mar 2016
page 4 of 8

DEPARTMENT OF HEALTH AND HUMAN SERVICES
Social Security Administration

## EXPLANATION OF DETERMINATION

| Name of Claimant | SSN | Type of Claim |
|---|---|---|
| SANDRA LYNN HARRINGTON | XXX-XX-9625 | RCDIB |

The determination on your claim was made by an agency of the State.  Doctors and other people in the State Agency who are trained in disability evaluation reviewed the evidence and made the determination based on Social Security Law and Regulations.  The determination was not made by your own doctor or by other people or agencies writing reports about you.  However, any evidence they gave us was used in making this determination.

Suspect Social Security Fraud?  If you suspect Social Security fraud, please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

Sospecha que alguien esta cometiendo fraude contra el Seguro Social?  Si sospecha de fraude contra el Seguro Social, por favor visite http://oig.ssa.gov/e o llame a la linea directa de abuso y fraude de la Oficina del Inspector General, 1-800-269-0271, y oprima el 7 para espanol (TTY 1-866-501-2101).

In addition to the information used in the prior determination, the following medical information was used to decide this claim:

| | |
|---|---|
| JOHN P HUFF MD | Report Received 03/11/16 |
| RICHARD A BELLACOSA DPM | Report Received 03/14/16 |

We were unable to obtain additional reports, however, we had enough information to determine this claim.  We used evidence submitted by you.

You said you are disabled because of RA, DDD, spondylitis, OA, fibromyalgia, sleep apnea, neuropathy, HTN, GERD, scoliosis, migraines, asthma, COPD, sinusitis, depression, and anxiety. You said you became disabled on 10/15/10, but you continued to work until 04/30/15, the date we find you to be disabled.

/CNZHD3

*date of 1st RAs*



/CNZHD3

Form   SSA-4268-U4

*Item 8a.p.17*
*3-4 Mar 2016*
*page 5 of 8*

**§216.1 Form: Employment Questionnaire**

To: _SOCIAL SECURITY ADMINISTRATION_

Re: _MS. SANDY HARRINGTON_

SSN: _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_

Please answer the following questions.

Did you grant any of the following special considerations to allow this employee to work?  (Check all that apply.)

| Fewer or easier duties | | Frequent absences | ✗ |
|---|---|---|---|
| Special supervision | ✗ | Extra help from coworkers | ✗ |
| Lower quality | | More rest periods | ✗ |
| Lower production | | Special equipment | ✗ |
| Fewer hours | | Lower efficiency | |
| Irregular hours | ✗ | Special transportation | |

Please explain any items checked above and describe any other special considerations granted:

_ALLOWED TO WORK FROM HOME UTILIZING EMPLOYER PROVIDED COMMUNICATION_
_EQUIPMENT SAW REASONABLE ACCOMODATION FOR MEDICAL CONDITION. PROGRESSION OF CONDITION_
_RESULTED IN UNPREDICTABLE AND IRREGULAR HOURS, FREQUENT ABSENCES, AND REQUIREMENT FOR_

Was the employee hired because of family relationship, past association with the employer or other
altruistic reason?                                    Yes ___   No _X_

_SUPERVISOR OR_
_SUBORDINATES_
_TO SIT IN ON_
_MEETINGS, SIGN_
_DOCUMENTS,_
_AND/OR COMPLETE_
_TASKS_

Explain Yes answer: _____

_____

Did the employee have trouble relating to co-workers?      Yes _✓_    No ___

Explain Yes answer: _IN SEVERAL SITUATIONS, CO-WORKERS HARASSED OR COMPLAINED_
_ABOUT REASONABLE ACCOMODATIONS AND MEDICAL CONDITIONS_

Did the employee have trouble relating to the public?      Yes ___    No _X_

Explain Yes answer: _____

_____

Did the employee have trouble dealing with normal work stress?  Yes _X_    No ___

Explain Yes answer: _PHYSICAL CONDITION, CHRONIC PAIN, MEDICATION, AND_
_DIFFICULTY WITH CO-WORKERS LIMITED RESILIENCE_

Did the employee have trouble following directions?       Yes ___    No _X_

Explain Yes answer: _____

Item 8a p.17
3-4 Mar 2016
page 6 of 8

Did the employee have trouble maintaining attention and concentration?   Yes _X_      No ___

Explain Yes answer: _DEPENDENT UPON SIDE-EFFECTS OF MEDICATIONS +_

_DISRUPTED SLEEP_

**Was the employee frequently absent from work?**                     Yes _X_      No ___

**Was the employee's work satisfactory?**                              Yes _X_      No ___

**If the employee no longer works for you, when did his/her employment end and why?**

_EMPLOYMENT CEASED WITH RELOCATION OF POSITION ON_

_30 APR 2015 AND PREVIOUS REASONABLE ACCOMMODATIONS_

_CEASED._

Space for any additional remarks you may wish to provide:

_SEE ATTACHED_

Signature: _____

Title: _ROBERT A. GOODMAN LTC, VC_

Date: _29 FEB 16_

Telephone Number: _(210)602-3345_

_I tem 8a.p.17_
_3-4 Mar 2016_
_page 7 of 8_

**ADDENDUM TO FORM 216.1 – EMPLOYMENT QUESTIONNAIRE**

**TO: Whom it May Concern**

**RE: Ms. Sandy Harrington**

**Summary of Special Consideration and accommodations due to disability.**

Ms. Harrington's documented disability required accommodations for work location, duration, and intensity. The alternate work schedule required to accommodate her disability was no longer within organizational policy when the United States Army Veterinary Command was dissolved and integrated in the United States Army Public Health Command. Special considerations were made for Ms. Harrington based on the ongoing establishment of the Veterinary Service Central Fund which required her unique knowledge and skills. Once the initial phase of establishment of the VSCF was complete, the position was relocated to Aberdeen Proving Grounds and continuation of reasonable accommodations was not practicable.

During the course of the 3 years during which Ms. Harrington worked for me, the quality of her work was impeccable; however, the timeliness, complexity, and variety of assignments were carefully managed in order to ensure completion. Due to her illness and associated accommodations, Ms. Harrington was unavailable for assignment of short-suspense, highly complex projects requiring high-volume of typing or presentation graphics. She was also unavailable to provide timely supervisory intervention in work place crises which could have prevented escalation inherent when the immediate supervisor is not present. Additionally, important meetings were required to be scheduled around Ms. Harrington's on-site times in the afternoons in order to accommodate the modified work schedule or these meeting were attended by others in her place.

✱ The management flexibility required to provide these accommodations created a degree of inter-office tension and discord which included formal and informal complaints by other employees and culminated in an emotional breakdown by Ms. Harrington and the intervention of a higher level of command. ( PHC) ⊕

In summary, Ms. Sandy Harrington retains a very important and valuable set of knowledge and skills that are highly specialized and specific to her previous organization; however, the accommodations required for her to work (telework with flexible hours and long project duration due to the unpredictable nature of her ability to work at any given place, time, or duration due to episodes of pain, limited mobility, and disrupted sleep) make her generally unhireable. Progression of conditions has resulted in required accommodations to no longer be reasonable and I would be unable to make a positive recommendation for employment as a reference.

_[signature]_
2.29.16

Item 8a. p.17
3-4 Mar 2016
page 8 of 8

I developed an anxiety disorder due to constant hostility + harassment and fear/dread of having to go into the office and deal with certain co-workers. ⊕

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8a. SPECIFICS OF CLAIM

**17 Mar 2016**

Ms. Lopez, Mediator, requested dates Agency was available to schedule mediation; I had already submitted mine.  She also called me and requested I make yet another effort to discuss settlement of NAF Disability Retirement claim; I notified Mr. Pfeffer and Mr. Heuer via email.

**21 Mar 2016**

Mr. Pfeffer emailed "I will be speaking with the settlement authority soon to discuss your case … Please provide me with reasonable updates to your remedies, if any, to settle this case so that I can find the appropriate approving authority."  He then listed my remedies as originally listed on my initial EEO complaint.  I responded via email "Yes, I will need to update that information with the most recent as provided to the EEO office and investigator – I was terminated after those listed below were prepared so the extension in terms of completing the audits in OBE."

Mr. Pfeffer emailed me that he was awaiting my "final update to the requested remedies" and to "Please provide as soon as possible so we can begin mediation."  I responded: "I'm attaching the updated information as provided to both the local EEO Office ("clarification" attachment) and Investigator (last page of "rebuttal" attachment).  There was much disagreement as to whose responsibility it was to ensure matters were properly and officially included and investigated in the complaints, and Ms. Preda, the Chief of the local EEOC office, indicated I should provide the information I was concerned wasn't being addressed to the Judge when the hearing was set, so I am copying the Judge's e-mail as well."  Again, per Ms. Preda's email based upon Ms. Masten's legal review, the items were already "part of the continued claim."  Mr. Pfeffer indicated "what we are looking for is possible remedies or actions that would resolve your case." And "mediation is a mechanism for both parties to reach an acceptable middle ground for both parties".  He then chastised me for including the AJ on my previous email as "it appears as though you are also questioning the partial dismissal or statement of the claim".  He went on to

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8a. SPECIFICS OF CLAIM

state "IMCOM – not MEDCOM – solely determined the outcome of your Disability Retirement application. ***Note both of these are Army entities, and Agency Representatives should be able to represent and negotiate on behalf of the entire US Army.*** As a practical matter, retirement is generally not handled in mediation because of the regulations that cover eligibility [not applicable in my case]. With that in mind, you may want to rethink some of your possible remedies. As an example, since you are not eligible for Discontinued Service Retirement, there might be a dollar figure that is measurable (for instance, the dollar amount difference from your current retirement and Discontinued Service Retirement). This would assist me tremendously so I can determine who would be the best settlement authority to bring to the table. While I do not want to dissuade your from participating in mediation, Discontinued Service Retirement, reclassification of your position, and Disability Retirement are not likely to be on the table due to your current retirement status." Note the reason the retirement issues are complaints is because I was denied them DESPITE having met the regulatory eligibility requirements. Unfortunately, due to the Agency's refusal to provide information related to the final disposition of my position at APG, I cannot prove that it was abolished and so cannot at this time definitively prove I was eligible for Discontinued Service Retirement. However, my NAF Disability Retirement was clearly denied in error as the stated reason for the denial was a misrepresentation of my dr's statement supporting my application. ***This in itself is de facto discrimination as I am effectively being penalized for having had reasonable accommodations under the Rehab Act/ADA. If this reasoning is allowed to stand, then potentially any employee who might be able to work with reasonable accommodations can be denied Disability Retirement on the basic they can still work. This is particularly egregious and discriminatory when the Agency did not offer me any work which actually included reasonable accommodations.*** I am seeking the correction of an ERRONEOUS denial, not a change in the regulatory eligibility requirements. For my retirement issues to be ineligible for resolution because I was forced into a last minute early retirement election in order

Page **19** of **24**

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8a. SPECIFICS OF CLAIM

to prevent a break in service that would have eliminated my medical and health insurance benefits due to my Termination for Adverse Action on 2 days' notice rather than allowing me time to appeal my Disability Retirement denial once COL Honadel officially responded to my request for Discontinued Service Retirement in conjunction with my response to the Notice of Proposed Removal is discrimination and retaliation.

**23 Mar 2016**

I responded to Mr. Pfeffer's suggestions and submitted a detailed proposed settlement addressing in detail the items he listed.

**29 Mar 2016**

Mr. Pfeffer, Attorney Advisor, responded to Ms. Lopez "The agency believes there is no reason to conduct mediation."

**1 Apr 2016**

I emailed Mr. Heuer "Thank you for your recently received response (attached).  I am also sending all correspondence submitted ref the appeal to the EEOC administrative Judge's office … and copying the Agency's counsel for inclusion in their case files as these denials remain a part of the EEO complaint & request for remedy and that complaint & remedy request is entering the administrative hearing process as an administrative judge has now been assigned to the case.  Please provide the specific and detailed calculations of what my Early Retirement is vs. what Discontinued Service Retirement or Disability Retirement would have been had either of them been granted in lieu of my termination on extremely short notice 30 April 2015. This information is being requested by the Agency's counsel in conjunction with possible mediation and as part of the discovery process in the impending administrative hearing."  This was necessary because Mr. Pfeffer did not believe my calculations submitted 23 March 2016 could possibly be accurate.  Mr. Heuer responded: "Receipt acknowledged, Sandra.  I've

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8a. SPECIFICS OF CLAIM

referred this e-mail and attachments to the benefits staff to consider your appeal on the merits. Note how this conflicted with his statement on 5 Apr 2016 below.

**5 Apr 2016**

Ms. Jordan emailed the requested retirement calculations "on behalf of Mr. Heuer" and stated: "Per your request, we have attached the following documents:  1) Discontinued Service Retirement Calculation your organization did not offer due to the nature of their move/transfer of function.  [Note it does NOT say I was ineligible; under the NAF regulation, the installation commander, in the VSCF's case COL Honadel, is the approving authority.]  2) Disability Retirement Calculation - our office has determined you did not meet eligibility requirements of total and permanently disabled [Note this is despite the fact that the Social Security Administration, which has a MUCH stricter definition of total and permanent disability, DID determine I met those requirements], and 3) Early Retirement Calculation - you were eligible, elected and are currently receiving benefits." [Note the decision I was forced to make with virtually no warning and under extreme duress due to my Termination for Adverse Action should not be considered an "election"]  I emailed Mr. Heuer and asked if the most recent denial was "the final determination on this matter? … the denial constitutes discrimination against me because it is based on your office's determination that I was able to continue working with reasonable accommodations that no one considers reasonable or was willing to provide." Mr. Heuer emailed: "Ms. Harrington – The final denial of your appeal was sent on March 11, 2016. That letter contains the reasoning for the denial.  In short, you elected to take an Early Retirement.  Following the passage of 60 days, that election was irrevocable.  ___As you have elected to pursue relief through the EEO process, I encourage you to seek your remedy in that forum.___"  [Note how this conflicted with his statement on 1 Apr above.  When the hard copy of the denial was actually received, it was dated 11 Mar 2016, SIGNED BY MR. HEUER, and postmarked 28 Mar 2016.  Obviously, it was not reconsidered 1 Apr as previously indicated.

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8a. SPECIFICS OF CLAIM

It again stated the denial was "based on your physician's statement dated March 9, 2015 which stated that you were able to hold employment and telework." but my physician made no such statement. It went on to state the 2016 appeal was denied because: "(a) your revised request for disability retirement was not submitted within 60 days after termination as require by the Plan document; and (b) you made an irrevocable election to receive an Early Retirement benefit." Again, the required last-minute election in order to prevent a break in service and preserve my benefits was unreasonable; also, this was an appeal, for which the 60-day regulatory requirement to submit an INITIAL application is NOT applicable, and the only "irrevocable" requirement mentioned in the retirement plan documents relates to survivors' benefits.]

**11 May 2016**

Ms. Lopez emailed the Agency and me: "What is the status of the parties' mediation efforts this far??? … The ADR referral was issued on March 15, 2016 by Judge Gutierrez. I expect her to soon be asking me to the status too."

**16 May 2016**

Mr. Pfeffer emailed Ms. Lopez: "If Ms. Harrington is interested, I can see if the command and NAF is willing to a reconsideration of her request as a settlement understanding this may or may not lead to granting NAF Disability Retirement." I responded: "Sir, am I being asked if I am interested in settling solely on the basis of having my previous request for NAF Disability Retirement – the latest request having been made because Social Security has now granted me disability back to my termination date – considered but without knowing the result of the reconsideration in advance of the accepting the settlement?"

**17 May 2016**

Mr. Pfeffer emailed: "Yes, that is what I am saying. The Agency is under no obligation to reconsider your NAF retirement request … However, I might be able to persuade them to settle

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8a. SPECIFICS OF CLAIM

your case."  I respond: "I cannot in good conscience trust the Agency at this point to act in good faith since they continue to refuse to do so …so, no, I cannot agree to a settlement without knowing the exact details of the final outcome.  I am disappointed this matter will require continued EEOC intervention."

**20 May 2016**

Mr. Heuer sent a tersely worded response indicating the appeal was (still) denied and accusing me of "impeaching the credibility of your claimed inability to work" citing "two emails sent by you …attesting to your willingness to return to work.  These statements directly contradict that you are totally and permanently disabled.  Bargaining with your former agency to return to work is also incompatible with acceptance of your doctor's recent conclusion that you are incapable of further employment.  In sum, the evidence does not support your request for reconsideration. Accordingly, it is denied."  Note Mr. Heuer fails to mention that the referenced emails and any and all references to my returning to work were clearly caveated with my continued and ever-increasing need for reasonable accommodations and my belief, based on my experience with PHC and the PPP programs of MEDCOM and DoD, that no one would be willing to provide the needed accommodations as they would not consider them reasonable.  It's also interesting to note that IMCOM, his command and my previous employer prior to the Veterinary Command, does not allow accommodations of the nature I needed in positions such as the one I held.  Mr. Heuer's apparent policy that employees who MIGHT be able to continue working under accommodations that no employer considers reasonable or is willing to provide are INELIGIBLE for NAF disability retirement is clearly DISCRIMINATORY.  He's using the ADA / Rehab Act AGAINST disabled NAF employees by penalizing them for having previously worked with accommodations that at the time were available and considered reasonable and then denying them – or at least me – disability benefits when the accommodations are no longer available and the employee – or at least me -- is no longer able to work.]  My email response to Mr.

Heuer: "Sir, thank you for your response.  As for impeaching my own credibility, I have not.  The Rehab Act / ADA were enacted in part to allow employers to provide reasonable accommodation so that employees who would otherwise be unable to work could continue working and not be forced into disability retirement.  For more than 4 years I successfully worked under these accommodations until PHC declined to renew them.  My physician was very clear that I could not work absent these reasonable accommodations, and my request to maintain my current or alternate employment all expressly included them.  I also specified in my most recent reinstatement request that it was in order to facilitate correcting my retirement and not based upon any expectation I would be further accommodated.  It is unfortunate the Army continues to attempt to hold the Rehab Act / ADA against me rather than honoring its intent.  I will copy the EEOC Mediator on this so that she can include it in the case files as a record that I followed her suggestion and attempted resolution one last time prior to her referring the matter to the AJ."  Mr. Heuer's response: "Re:  contradiction between requesting reemployment and requesting NAF Disability Retirement, recall that the standard for NAF is "total and permanent disability".  [Note, per Ms. Lopez, she was told the only way to change my retirement would be to reinstate me, terminate my early retirement, and then proceed with the Disability Retirement ONCE APPROVED, but Mr. Heuer indicates that, even if I did that, the very act of reinstating me would disqualify me from the Disability Retirement as it would show that I am NOT totally and permanently disabled.  I had previously indicated in my 3 May 2016 email when I submitted my Social Security Disability Benefits as support for my appeal of the denial of my NAF Disability Retirement that "I am certain the U.S. Army has someone capable of working out the technicalities of such a settlement since my NAF retirement does not involve OPM or any other non-Army agency", but clearly Mr. Heuer does not intend to be that someone.]

**\*Next, the process of EEO motions, briefs, rebuttals, decisions, appeals, etc. ensued\***

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8c. RELEVANT
DOCUMENTATION

## ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM #8c.
## RELEVANT DOCUMENTATION (all available in EEOC case files & last two are
## included in this complaint; list is not intended to be exhaustive)

1. **Plaintiff's Position Description & Performance Rating(s)**

   Will detail job duties and qualifications to show whether or not position
   transferred to APG as is, or, compared to yet to be received Agency paperwork
   on disposition of same position upon transfer for APG, position of plaintiff was
   effectively abolished and plaintiff is entitled to Discontinued Service Retirement;
   will also show plaintiff was successfully performing duties in position description
   as well as successfully performing duties outside position description for which
   she was not compensated because position was not properly classified

2. **Plaintiff's signed telework agreement**

   Will show basics of plaintiff's telework agreement that expired in 2014 and was
   not offered to be continued upon transfer of function although plaintiff had been
   successfully performing position requirements under that agreement and position
   was purportedly transferring 'as is' to APG

3. **Plaintiff's Requests for Reasonable Accommodation & Defendant's
   Responses**

   Will show plaintiff requested reasonable accommodations in good faith but
   defendant failed either to accommodate or to definitively refuse accommodations
   in support of plaintiff's request for Disability Retirement

4. **PHC Telework Policy**

Will show telework for supervisors was limited to 1 day per week plus ad hoc and would not allow continuation of plaintiff's then current reasonable accommodations allowing a minimum of 2 telework days per week plus a very flexible schedule of when hours were actually worked during days worked

5. **Plaintiff's applications (original & appeal) for Disability Retirement**

Will show plaintiff's physician & Agency's occupational health physician both indicated plaintiff could NOT work without current & increasing accommodations and that plaintiff met requirements for Disability Retirement according to regulations in effect at time of applications; will show no legitimate, non-discriminatory reasons for denial

6. **E-mail correspondence between plaintiff & Agency ref Disability Retirement denial**

Will show Agency continued to maintain plaintiff must either be unqualified and totally and permanently unable to work or was able to work and therefore ineligible for disability retirement without taking reasonable accommodations into account in direct contradiction to Cleveland v. Policy Management Systems Corporation et al., U.S., 119 United states Supreme Court 1597 (1999), in which Supreme Court Justice Breyer, delivering the opinion for a unanimous Court, said: "In our view, however, despite the appearance of conflict that arises from the language of the two statues (the ADA & SSA), the two claims do not inherently conflict to the point where courts should apply a special negative presumption like the one applied by the Court of Appeals here. That is because there are too many situations in which an SSDI claim and an ADA claim can

comfortably exist side by side.  For one thing, as we have noted, the ADA defines a "qualified individual" to include a disabled person "who ... can perform the essential functions" of her job *"with reasonable accommodation"*.  Reasonable accommodation may include: "job restructuring, part-time or modified work schedules, reassignment to a vacant position ..." 42 U.S.C.12111(9)(B).  By way of contrast, when the SSA determines whether an individual is disabled for SSDI purposes, it does not take the possibility of "reasonable accommodation" into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI. ... the matter of "reasonable accommodation" may turn on highly disputed workplace-specific matters; and an SSA misjudgment about that detailed, and often fact-specific matter would deprive a seriously disabled person of the critical financial support the statute seeks to provide. ... The result is that an ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it. ... Our ordinary rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to "set forth two or more statements of a claim or defense alternative or hypothetically," and to "state as many separate claims or defenses as the party has regardless of consistency."  Fed. Rule Civ. Proc. 8(e)(2).  We do not see why the law in respect to the assertion of SSDI and ADA claims should differ. ... To defeat summary judgment, that explanation (of any apparent inconsistency) must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of,

or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation". ... The parties should have the opportunity in the trial court to present, or to contest, these explanations, in sworn form where appropriate. [The court then vacated the judgment of the Court of Appeals upholding the District Court's summary judgement and remanded the case for further proceedings.] The case is relevant because SSA disability requirements are specifically referenced in the NAF Disability Retirement application and the SSA disability requirements are actually more restrictive than the NAF Disability Retirement requirements; i.e., since plaintiff met the more restrictive SSA disability requirements, NAF Disability Retirement should be granted but, if not, the principles of this case should allow plaintiff's complaint to proceed to trial.

7. **Transfer of Function Documentation**

   Will show Termination as an Adverse Action was improper since Agency was aware plaintiff was eligible for Early Retirement at a minimum; will show no legitimate, non-discriminatory or non-retaliatory reason for processing plaintiff's removal as an Adverse Action Termination rather than Separation for Retirement

8. **Jessica Shiepko full testimony to EEO Investigator**

   Will show hostile work environment

9. **Plaintiff's sworn statement for AR 15-6 IG complaint (included)**

   Will show PHC was aware plaintiff was subjected to hostile work environment

10. **Request to Amend Discrimination Complaint (included)**

ATTACHMENT TO SANDRA L. HARRINGTON EEOC COMPLAINT FORM ITEM 8c. RELEVANT
DOCUMENTATION

Will show plaintiff's request to amend complaint and remedies requested for

clarity in order to specifically include denials of Discontinued and Disability

Retirements was improperly denied due to the conflict of interest of Ms. Masten

being both the local EEO legal counsel and the Agency Representative



**DEPARTMENT OF THE AIR FORCE**
**502D AIR BASE WING**
**JOINT BASE SAN ANTONIO**

MEMORANDUM FOR SANDRA HARRINGTON
                       219 BROKEN ARROW
                       FLORESVILLE TX 78114

*13 May 15*

FROM:  502 ABW/EO
          2428 Stanley Road, Suite 21
          Ft Sam Houston TX 78234

SUBJECT:  Formal Complaint Acceptance--Sandra Harrington v. John McHugh, Secretary of the
             Army, #ARFTSAM15JAN00205

1.  This refers to your complaint filed on March 11, 2015.  The most recent date of the alleged discrimination giving rise to this complaint was January 23, 2015.  The precomplaint interview was February 2, 2015.  The final interview was February 25, 2015, and your receipt of the Notice of Right to File a Formal Complaint after traditional counseling was March 6, 2015.  Receipt of your formal complaint was acknowledged by our letter dated March 13, 2015.  You amended your complaint on April 28, 2015.  Receipt of your amendment was acknowledged by our letter dated the same day.

2.  You alleged ongoing harassment based on disability (arthritis, life-threatening sleep apnea, and strokes) which subjected you to a hostile work environment from June 1, 2014-April 28, 2015, by LTC Matt Takara (supervisor) and COL Thomas Honadel (second-level supervisor), Public Health Command, Aberdeen Proving Ground MD, when:

    a.  On April 28, 2015, you received a Notice of Removal from COL Honadel.

    b.  On/about January 23, 2015, you were told your position at Ft Sam Houston TX would not be abolished because they wanted to keep another employee when abolishing your job would have changed your eligibility for discontinued service retirement and even though Occupational Health advised that you not be relocated due to your disability.

    c.  From April 2014-January 23, 2015, you were repeatedly denied your reasonable accommodation requests to remain at Ft Sam Houston and telework.

    d.  On/about December 12, 2014, your request to remain in your position until the end of the fiscal year to complete your high-priority audits were denied.

    e.  From June 1-December, 2014, COL Honadel delayed his decision on your position knowing this affected your registration/referral under the Priority Placement Program, pay/benefits, and retirement; and led to the job being reclassified as nonappropriated fund.

    f.  On/about June 1, 2014, you were tasked to provide additional medical documentation when management already had the documents.

*item #10*
*page 1 of 11*



**DEPARTMENT OF THE AIR FORCE**
**502D AIR BASE WING**
**JOINT BASE SAN ANTONIO**

29 Sep 15

MEMORANDUM FOR INVESTIGATIONS AND RESOLUTION DIRECTORATE
        DEFENSE CIVILIAN PERSONNEL ADVISORY SERVICE
        4800 MARK CENTER DRIVE 06G21
        ALEXANDRIA VA 22350

FROM:  502 ABW/EO
        2428 Stanley Road, Suite 21
        Ft Sam Houston TX 78234

SUBJECT:  Sandra Harrington, #ARFTSAM15JAN00205

1.  The agency is submitting acknowledgement of complainant's request.  On 11 Sep 15, she contacted our office to add an additional basis (reprisal) to her formal complaint.  Please refer to the attached documentation regarding what she believed were additional incidents to support her complaint.  Request consideration for inclusion of these incidents in the investigation.

2.  If this is not possible, complainant has the right to present her concerns to the Equal Employment Opportunity Commission (EEOC) to either (a) the Administrative Judge where it is under his/her jurisdiction or (b) EEOC Office of Federal Operations on appeal if a hearing has not been requested.

3.  If you have any questions or concerns, please contact Debi Barnes, EO Specialist, (210) 221-9194 or deborah.l.barnes20.civ@mail.mil.

MARIA E PREDA, GS-12, DAF
Ft Sam Houston EO/ADR Director

Attachment:
Complainant's Documents

cc:
Complainant

000245

Item #10
page
2 of 11

26 Aug 15

MEMORANDUM FOR 502 ABW/EO

FROM: Sandra Harrington

SUBJECT: Amendment to Formal Complaint--#ARFTSAM15JAN00205

I wish to amend my formal complaint to add new incidents of ongoing harassment and discrimination based on disability (arthritis, life-threatening sleep apnea, and strokes) and reprisal (filing this complaint) which subjected me to a hostile work environment by COL Thomas Honadel (second-level supervisor), Public Health Command, Aberdeen Proving Ground MD, when (a) from June 1, 2014-April 2015, COL Honadel repeatedly denied your reasonable accommodation requests for a discontinued service retirement; (b) in early March 2015, COL Honadel's failure to explore all available options with the IMCOM G9 resulted in the IMCOM G9 disapproving your disability retirement on March 17, 2015; and (c) from September 2014-April 2015, COL Honadel failed to reclassify your position, which negatively affected your pay and entitlements including retirement benefits.

*Sandra Harrington*
SANDRA HARRINGTON

000246

Item #10
page
3 of 11

Sandra Harrington EEO Complaint

27 August 2015

MEMORANDUM FOR 502 ABW/EO

FROM: Sandra Harrington

SUBJECT: Restatement / Clarification of Formal Complaint -- #ARFTSAM15JAN00205

I wish to restate / clarify my complaint to ensure that it is clear that my complaint includes both harassment and discrimination against me on the basis of my disabilities (multiple degenerative autoimmune / arthritis disorders, life threatening sleep apnea further complicated by a congenital heart defect causing strokes, and other conditions as noted in my Requests for Reasonable Accommodation) which resulted in the following issues / adverse actions by Army's Public Health Command (PHC) and retaliation by PHC for filing this complaint:

(1) Failure to properly reclassify my position to reflect Supervisory status as well as the scope and complexity of duties actually continuously performed since FY13; this negatively affected my pay and benefits while employed and now affects my retirement benefits. I repeatedly requested reclassification prior to LTC Takara's and COL Honadel's arrivals and formally requested it to LTC Takara and COL Honadel as part of my Individual Development Plan dtd Sep 2014 which they approved and forwarded to PHC G1; however, my position was not reclassified prior to my termination.

(2) Failure to Act Upon and Denial of Requests for Reasonable Accommodation:

    a. Denial of opportunity to transfer to Aberdeen (APG) with Transfer of Function (TOF) with continuance of pre-existing reasonable accommodations which had been in place with existing position since Nov 2010; this complaint includes refusal to even consider continuing existing accommodations in conjunction with TOF to APG which necessitated my formal Request for Reasonable Accommodation to maintain current accommodations and work remotely from FSH. I was repeatedly verbally told by LTC Goodman and COL Torring and then COL Honadel during TOF discussions from 2014 forward that the reasonable accommodations I had been granted since Nov 2010 would not be allowed upon transfer to PHC in APG; I was specifically told PHC in APG did not allow telework as a reasonable accommodation in excess of PHC's existing policy of possible supervisory approval of telework of 1 day per week for non-supervisory personnel only.

    b. Denial of formal Request for Reasonable Accommodation to remain in existing position and work remotely from FSH in order to continue pre-existing reasonable accommodations which had been in place with existing position since Nov 2010; this complaint includes refusal to adhere to Army Reasonable Accommodation Policy requiring "prompt, fair, and efficient" processing to include failure to provide written Army policy and applicable POCs, failure to engage in interactive process, lack of timely responses which affected my ability to register for Priority Placement Programs, improper handling of and requests and lack of proper authorizations for disclosure of medical documentation, lack of coordination with Disability Program Manager, and failure to accommodate in any way to include reassignment. My original written request was sent to PHC G1 in Apr 2014 with interim requests and denials by LTC Takara, but the final appeal decision by COL Honadel was not issued until Dec 2014. I requested

1

<u>237</u>

Item#10
page
4 of 11

Sandra Harrington EEO Complaint

MEDCOM (MACOM) EEO office assistance to ensure proper adherence to Army policy to no avail.

(3) Improper denial of Discontinued Service Retirement (DSR); this was repeatedly requested in conjunction with Requests for Reasonable Accommodations and in responses and appeals to Notice of Proposed Removal and lastly denied when terminated by COL Honadel Apr 2015.

(4) Undue PHC command influence contributing to improper denial of Disability Retirement by IMCOM G9 and improper denial of Disability Retirement by IMCOM G9 (Army's IMCOM G9 administers my NAF retirement benefits under the Portability Act) Mar 2015. NAF disability retirement determinations are made by IMCOM G9 in coordination with the employee's chain of command and COL Honadel repeatedly assured me he was researching and coordinating all available options with IMCOM G9. I am unable to determine who exactly in IMCOM G9 made the denial determination as the signature block on the denial letter does not appear to be the same as that of the authority indicated appropriate by regulation AR 215-3.

(5) Improper and retaliatory involuntary adverse action removal / termination on 2 days' notice Apr 2015 by COL Honadel in lieu of sufficient time to affect an orderly retirement. This caused a temporary termination and disruption of my life and medical insurances as well as delay of already scheduled surgery and other medical treatments.

**It came to my attention in conjunction with my interview with the Investigator yesterday that my complaint is being investigated solely as a harassment complaint and not as a disability and retaliation complaint as well and that this clarification and a new acceptance letter from your office are necessary in order for the discrimination and retaliation components to be investigated. Please note my initial formal complaint clearly indicates I alleged both harassment and discrimination; the retaliation occurred in response to that formal complaint. Also please note all the above items were reported and included in my complaint file in a timely manner. Please proceed accordingly so that the investigation can properly include all allegations as listed.**

Additionally I wish to clarify my requests for relief to include:

(1) Approval of Discontinued Service Retirement (DSR) to include reinstatement with retroactive full pay and benefits from termination / forced early retirement date until such time as DSR is fully in effect.

(2) Approval of Disability Retirement so that my records properly reflect its applicability and availability.

**These requests were not made previously as it was my understanding items occurring after the acceptance for investigation would be addressed with the Investigator; however, based on my conversation with the Investigator yesterday, I now understand that is not the case and they must be addressed with your office instead.**

**Many thanks!**

Sandra Harrington
**Sandra Harrington**

Cc: Anthony Zachas, Investigator

Item#10
000248 page
5 of 11

## Zachas, Anthony J CIV DODHRA DCPAS (US)

| | |
|---|---|
| **From:** | Preda, Maria E CIV USAF 502 ABW (US) |
| **Sent:** | Thursday, October 01, 2015 10:27 AM |
| **To:** | Zachas, Anthony J CIV DODHRA DCPAS (US) |
| **Cc:** | Barnes, Deborah L CIV USAF (US) |
| **Subject:** | RE: Harrington |
| **Signed By:** | maria.preda@us.af.mil |

Good Morning Mr. Zachas,

Incidents were not accepted since they are part of the continued claim.

Maria Preda
502 ABW FSH EO/ADR Program Manager
2428 Stanley Road, Suite 21
JBSA Fort Sam Houston, TX 78234
C: 210-221-1177 DSN 471
F: 210-221-1322
maria.e.preda.civ@mail.mil
FOR OFFICIAL USE ONLY - This email and any attachments may contain
information that is protected from disclosure by federal law (the Privacy
Act of 1974) and should be viewed only by those with an official "need to
know." If you are not the intended recipient, be aware that any disclosure,
copying, distribution or use of the content of this information is
prohibited. If you have received this communication in error, please notify
me immediately by email, delete the original message, and destroy any hard
copies you may have created. Any misuse or unauthorized disclosure may
result in both civil and criminal penalties.

-----Original Message-----
From: Zachas, Anthony J CIV DODHRA DCPAS (US)
Sent: Thursday, October 01, 2015 8:24 AM
To: Preda, Maria E CIV USAF 502 ABW (US)
Cc: Barnes, Deborah L CIV USAF (US)
Subject: FW: Harrington

Hello Ms. Preda,

After reading the attached letter, I need clarification.  The letter appears

to leave it to IRD (me) to consider whether or not Complainant's additional
incidents will be included in the investigation.  I cannot make that
decision.
Additional incidents must be accepted by the agency before they can be

Item#10
000249 page
6 of 11

investigated. I would need a letter that clearly states additional
incidents
have been accepted and IRD will  investigate them.

In this case it does not appear the incidents have been accepted.  Please
let
me know as soon as possible.

Thank you,
Tony

Anthony J. Zachas
IRD Investigator
703-350-9266


-----Original Message-----
From: Barnes, Deborah L CIV USAF (US)
Sent: Wednesday, September 30, 2015 6:18 PM
To: Zachas, Anthony J CIV DODHRA DCPAS (US)
Subject: RE: Harrington

This is the final response from Ms. Preda.

Debi Barnes
EO Specialist
502 ABW/EO
2428 Stanley Road, Bldg 142
JBSA-Ft Sam Houston TX 78234
(210) 221-9194
deborah.l.barnes20.civ@mail.mil


If you are a witness in a complaint, please do not discuss the questions or
your responses (including with supervisors and others) or you could open the
agency (Department of the Army or Department of the Air Force) up to
complaints of reprisal.  Please respond by the required suspense as
timelines are critical in an EEO complaint and this is an official inquiry.


This email contains FOR OFFICIAL USE ONLY information which must be
protected under the Privacy Act and AFI 33-332.  CAUTION:  This message may
contain competitive or other nonpublic information protected by federal law
from disclosure and not intended for disclosure outside official government
channels.  Do not disseminate this message without the approval of the
originating office.  If you receive this message in error, please notify the
sender by replay email and delete all copies of the messages.

Item #10
page
000250  7 of 11

-----Original Message-----
From: Zachas, Anthony J CIV DODHRA DCPAS (US)
Sent: Tuesday, September 29, 2015 10:53 AM
To: Barnes, Deborah L CIV USAF (US)
Subject: RE: Harrington

Okay...thanks.

Anthony J. Zachas
IRD Investigator
703-350-9266


-----Original Message-----
From: Barnes, Deborah L CIV USAF (US)
Sent: Tuesday, September 29, 2015 10:53 AM
To: Zachas, Anthony J CIV DODHRA DCPAS (US)
Subject: RE: Harrington

Maria had a relook and it has been sent back to Ms. Masten.  I hope today.

Debi Barnes
EO Specialist
502 ABW/EO
2428 Stanley Road, Bldg 142
JBSA-Ft Sam Houston TX 78234
(210) 221-9194
deborah.l.barnes20.civ@mail.mil


If you are a witness in a complaint, please do not discuss the questions or
your responses (including with supervisors and others) or you could open the
agency (Department of the Army or Department of the Air Force) up to
complaints of reprisal.  Please respond by the required suspense as
timelines are critical in an EEO complaint and this is an official inquiry.


This email contains FOR OFFICIAL USE ONLY information which must be
protected under the Privacy Act and AFI 33-332.  CAUTION:  This message may
contain competitive or other nonpublic information protected by federal law
from disclosure and not intended for disclosure outside official government
channels.  Do not disseminate this message without the approval of the
originating office.  If you receive this message in error, please notify the
sender by replay email and delete all copies of the messages.


-----Original Message-----



From: Zachas, Anthony J CIV DODHRA DCPAS (US)
Sent: Monday, September 28, 2015 3:28 PM
To: Barnes, Deborah L CIV USAF (US)
Subject: RE: Harrington

Sooo....maybe tomorrow? ;-)

Anthony J. Zachas
IRD Investigator
703-350-9266


-----Original Message-----
From: Barnes, Deborah L CIV USAF (US)
Sent: Monday, September 28, 2015 1:30 PM
To: Zachas, Anthony J CIV DODHRA DCPAS (US)
Subject: RE: Harrington

Maria came back this morning and I've told her we need this quickly.

Debi Barnes
EO Specialist
502 ABW/EO
2428 Stanley Road, Bldg 142
JBSA-Ft Sam Houston TX 78234
(210) 221-9194
deborah.l.barnes20.civ@mail.mil


If you are a witness in a complaint, please do not discuss the questions or
your responses (including with supervisors and others) or you could open the
agency (Department of the Army or Department of the Air Force) up to
complaints of reprisal.  Please respond by the required suspense as
timelines are critical in an EEO complaint and this is an official inquiry.


This email contains FOR OFFICIAL USE ONLY information which must be
protected under the Privacy Act and AFI 33-332.  CAUTION:  This message may
contain competitive or other nonpublic information protected by federal law
from disclosure and not intended for disclosure outside official government
channels.  Do not disseminate this message without the approval of the
originating office.  If you receive this message in error, please notify the
sender by replay email and delete all copies of the messages.


-----Original Message-----
From: Zachas, Anthony J CIV DODHRA DCPAS (US)
Sent: Thursday, September 24, 2015 1:37 PM



Item #10
page
000252 9 of 11

To: Barnes, Deborah L CIV USAF (US)
Subject: RE: Harrington

I need it as soon as possible--I'm in a position to finish with what I have,
but I've paused further interviews since an amendment is on its way.

Thanks!
Tony

Anthony J. Zachas
IRD Investigator
703-350-9266

-----Original Message-----
From: Barnes, Deborah L CIV USAF (US)
Sent: Thursday, September 24, 2015 1:21 PM
To: Zachas, Anthony J CIV DODHRA DCPAS (US)
Subject: RE: Harrington

It is still being legally reviewed.  When do you absolutely need the copy.

Debi Barnes
EO Specialist
502 ABW/EO
2428 Stanley Road, Bldg 142
JBSA-Ft Sam Houston TX 78234
(210) 221-9194
deborah.l.barnes20.civ@mail.mil


If you are a witness in a complaint, please do not discuss the questions or
your responses (including with supervisors and others) or you could open the
agency (Department of the Army or Department of the Air Force) up to
complaints of reprisal.  Please respond by the required suspense as
timelines are critical in an EEO complaint and this is an official inquiry.


This email contains FOR OFFICIAL USE ONLY information which must be
protected under the Privacy Act and AFI 33-332.  CAUTION:  This message may
contain competitive or other nonpublic information protected by federal law
from disclosure and not intended for disclosure outside official government
channels.  Do not disseminate this message without the approval of the
originating office.  If you receive this message in error, please notify the
sender by replay email and delete all copies of the messages.


-----Original Message-----
From: Zachas, Anthony J CIV DODHRA DCPAS (US)

000253
Item #10
page
10 of 11

Sent: Thursday, September 24, 2015 12:35 PM
To: Barnes, Deborah L CIV USAF (US)
Subject: Harrington

Hi Debi....any word yet on the amendment?

Thanks,
Tony

Anthony J. Zachas
Investigator
Investigations and Resolutions Directorate (IRD)
Defense Civilian Personnel Advisory Service (DCPAS)
Cell: 703-350-9266

***FOR OFFICIAL USE ONLY*** This email and any attachments may contain
information that is protected from disclosure by Federal law (the Privacy
Act of 1974) and should be viewed only by those with an official "need to
know." If you are not the intended recipient, be aware that any disclosure,
copying, distribution or use of the content of this information is
prohibited. If you have received this communication in error, please notify
me immediately by e-mail, delete the original message, and destroy any hard
copies you may have created. Any misuse or unauthorized disclosure may
result in both civil and criminal penalties.

000254

Item #10
page
11 of 11